JAMES M. MARDEN, administrator, *vs.* BOSTON AND ALBANY
RAILROAD COMPANY.

Suffolk. May 29, 31, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Loss of Life — Railroad — Child crossing Tracks after Gates are lowered —
Contributory Negligence.*

A girl eleven years old, who, while on her way to school, enters upon a railroad where it crosses a highway at grade, after the gates at the crossing have been lowered to warn travellers, and is killed by an engine while attempting to cross the tracks, is guilty of such contributory negligence as to preclude an action by

the administrator of her estate against the railroad corporation for causing her death, it appearing that she was familiar with the place, usually crossing it four times a day, and it not appearing that she had any occasion for haste, or any special inducement or invitation at the time to attempt the crossing.

TORT, by the administrator of the estate of Anna I. Hartley, for causing her death. The declaration contained three counts, one of which was under Pub. Sts. c. 112, § 213. Trial in the Superior Court, before *Dunbar*, J., who reported the case for the determination of this court, in substance as follows.

The plaintiff introduced evidence that his intestate was a school-girl of about eleven years of age, bright, active, and in possession of all her faculties; and that on May 13, 1891, while she was on her way to school, she was killed by being struck by one of the engines of the defendant on the highway called Everett Street in Boston. It was admitted that Everett Street was a public highway; that at this place the defendant had its repair shops and yard for cars; that at this crossing the defendant maintained thirteen railroad tracks; that outside these tracks, one on the north side and one on the south side, there was a swinging bar or tipping gate of the usual construction; that at and before the time of the death of the plaintiff's intestate the bar on the north side was up, and the one on the south side was down; that these bars were about one hundred and ninety to two hundred feet apart; that each of these two bars, when down, extended substantially across the highway; that about half-way between these outside gates, or a little nearer to the southerly side, there was another bar which, when down, extended from the east side of the crossing over that part of the street used by carriages to a lamp-post, which was in a line with the other posts outside the gates along the street; and that this bar was down at the time when the plaintiff's intestate reached it.

It appeared in evidence, that the defendant ran its passenger and freight trains over this crossing; that switching engines were frequently moving cars over this crossing to and from the repair shops; and that the care of this whole crossing, with the management of the three gates, was given to one man.

The evidence showed that about eight o'clock in the morning the plaintiff's intestate started from her home on the north side of

the railroad, with two other girls of about her age, to go to their schoolhouse on the south side of the railroad; that Everett Street was the usual and most direct route; that the three girls climbed over a fence on the north side of the tracks separating the tracks from Lincoln Street, and entered on the land of the defendant at about one hundred feet west of Everett Street and kept along on the first track of the defendant on the north side, until they came to Everett Street, near and inside of the open gate on the north side of the crossing; and that they then turned and walked along the side of the street, within the lines of the street, on the part thereof used by foot passengers, and passed the middle gate, which was down, when they saw on the west side of the street, and a little distance therefrom, a switching engine, standing on the first track south of the middle gate, facing the street, blowing out a cloud of steam and smoke. One of the two girls who were with the deceased at the time testified that they looked and saw that engine; that they did not stop, because they thought the gates were down for the switching engine; that it seemed to them that it was about to start, and they hastened to cross in front of it, and thought they could cross without running; that after they passed the switching engine they looked, and tried to see up the main track towards the west, but could not see, because of the smoke and steam from that engine; that between the second and third tracks they started diagonally across the tracks easterly in the direction of their schoolhouse in order to get around the end of the south gate, which was down, and they saw that the gate was down; that the plaintiff's intestate, who was a step or two ahead of the others, was struck while on the highway by a train of cars approaching from the west on the fourth track, and was killed; that they did not see the crossing-tender until after the accident, when he came and picked up the plaintiff's intestate; and that the deceased as well as the witness was used to this place, and usually crossed it four times a day.

The judge, against the objection of the plaintiff, ruled that he could not recover upon this evidence; and directed the jury to return a verdict for the defendant.

If the ruling was correct, judgment was to be entered on the verdict; otherwise, the case was to stand for trial.

*C. A. Taber*, for the plaintiff.

*Samuel Hoar*, for the defendant.

BARKER, J. Although one count of the declaration is drawn under the provisions of the Pub. Sts. c. 112, § 213, no proof was offered that the bell was not rung or that the whistle was not sounded for the crossing, and the plaintiff did not ask to go to the jury on that ground. We discuss only the question whether the plaintiff's intestate was guilty of contributory negligence, because, upon the other counts, proof was necessary that the injury was not occasioned by her fault.

She was killed at a crossing of a railroad and a highway, under such circumstances that but for the fact that she was a child the case would be governed by that of *Granger* v. *Boston & Albany Railroad*, 146 Mass. 276. As was there held, the defendant had the right to the exclusive use of the crossing when its trains were passing; and if it had given a warning, which a traveller disregarded, if he attempted without sufficient excuse to cross, he did so at his own risk. The lowered gates were a sufficient warning, and as several tracks were enclosed by them, no one had a right to suppose that the gates were down merely because of the switching engine, then not in motion; and it was negligence for a traveller to enter upon the tracks between the lowered gates when so warned that the exclusive use of the crossing was required for railroad purposes. This rule ought to be applied to the plaintiff's intestate, who was familiar with the place, usually crossing it four times a day, and who is not shown to have had any occasion for haste, or any special inducement or invitation at the time to disregard the warning, and attempt the crossing when the gates were down. The only proper inference from the evidence is that she understood and took the risk.

*Judgment on the verdict.*