[Civ. No. 840. First Appellate District.—December 13, 1910.]

# HERMANN BRETTHAUER, Respondent, v. JOHANNA MARIA FOLEY, Appellant.

ACTION TO SET ASIDE DEED TO NIECE—LOVE AND AFFECTION—LIFE
ESTATE IN GRANTOR—REMAINDER TO GRANTEE—ALLEGED FRAUD—
BREACH OF PROMISES—FINDINGS AGAINST EVIDENCE.—Where an
uncle deeded a ranch to his niece, who was the daughter of a beloved
sister of the grantor, in consideration of love and affection, which
deed was evidently intended to reserve a life estate in the grantor,
and vest the remainder absolutely in the grantee, and afterward
sued to set aside the deed for alleged fraud and breaches of prom-
ise, and the court sustained the action, it is held that its findings
that the niece promised that if the deed were made to her she
would love and care for the uncle during his life, and that she
would, during his life, manage and care for the property conveyed,
and receive the rents, issues and profits, and turn the same over
to him monthly, were each unsupported by the evidence.

ID.—ABSENCE OF FRAUD IN PROCUREMENT OF DEED.—Where the evidence
shows that when the deed of the ranch was made the defendant
was a schoolgirl living in San Francisco with her father, and plain-
tiff was living on the ranch in Santa Clara county, that he pre-
viously showed affection for her by presents, but there is no
evidence that she ever said anything to him about the deed, or that
any improper influence was ever brought to bear upon the plaintiff,
who voluntarily deeded the ranch to her, for love and affection, and
further support as declared in the deed, intending only to reserve
an estate for life in himself, and to vest in her an absolute estate
in fee in remainder, there is an entire absence of evidence of any
fraud or undue influence in the procurement of the deed.

ID.—TRUST CLAUSE IN DEED AS TO LIFE ESTATE—CONSTRUCTION—CON-
DUCT OF PARTIES—CONTINUED CONTROL BY GRANTOR.—A formal
trust clause in the deed that the grantee was to receive the net
rents and profits of the ranch and turn them over to the grantor
monthly during his life is to be interpreted by the circumstances and
conduct of the parties as a mere precaution in case the grantor
should become incompetent to manage the property. Defendant
was an inexperienced schoolgirl, who knew nothing about managing
a farm; and plaintiff remained in possession and control thereof
and received every cent of the income. Although after the earth-
quake and fire of April 18, 1906, which destroyed the home of
defendant's father in San Francisco, she and her father were in-
vited to visit plaintiff during that summer, plaintiff testified that
he never asked her to manage the property or collect rents.

ID.—FINDING AS TO PROMISE OF "LOVE AND CARE."—The finding as to the promise of "love and care" as part consideration for the deed shows a promise, which, whatever it may mean, is not in the deed. The only recital of "love and affection" therein is that of the grantor. The words "care for him" are of little significance, as plaintiff cared for himself, and controlled the property at all times, collected about $1,000 per year income, and besides had plenty of money on hand for his personal needs. It was not "nominated in the bond" that she was to love him.

ID.—PROMISE OF RESIDENCE ON RANCH AGAINST EVIDENCE.—The claim that it was part of the consideration for the deed that defendant should go on the ranch and live with the plaintiff is without merit and against the evidence. In all the correspondence between them there is no mention of such a promise. All of the parties who were present when the deed was made, including defendant's father, the attorney who drew the deed, and the notary who took plaintiff's acknowledgment, testified that they heard no mention of such a promise, nor is such promise mentioned in the original complaint.

ID.—FRAUD TO BE PLEADED AND PROVED BY SATISFACTORY EVIDENCE.—The plaintiff, in order to get rid of his solemn deed delivered to the defendant, must both allege the acts constituting fraud, and prove them by clear and satisfactory evidence. Fraud will never be presumed.

ID.—NATURE OF FRAUD.—Fraud has been defined as the successful employment of cunning, deception or artifice used to circumvent, cheat or defraud another. The intention to deceive is one of its main characteristics.

ID.—ABSENCE OF FRAUD—GENERAL RULE AS TO SETTING ASIDE DEED.—In the absence of fraud, the general rule is that a deed cannot be set aside for light or trivial reasons, nor because the grantor has changed his mind. It cannot be set aside on the ground that it was improvidently made.

ID.—PLAINTIFF NOT ENTITLED TO RELIEF.—There being no evidence of fraud on the part of the defendant, and it appearing that the deed to the defendant was supported by a good and sufficient consideration, that the grantor retained a life estate for his declining years, and that he voluntarily made the deed while in possession of all his faculties, he cannot now ask the aid of the court to relieve him of a condition brought about by his own deliberate and voluntary act.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

A. B. ·Foley, and Nicholas Bowden, for Appellant.

.Wm. H. Johnson, for Respondent.

COOPER, P. J.—This action was commenced in October, 1907, and by the complaint then filed it was sought to have a certain deed made by plaintiff to defendant on the seventh day of March, 1905, set aside and canceled on the ground that it was made without consideration; to have it adjudged that the plaintiff had the sole right to the possession of the property described in the deed, and further to enjoin the defendant from occupying or retaining possession of the said premises. By leave of the court plaintiff twice amended the complaint, and the pleading on plaintiff's part on which he went to trial is the second amended complaint. It is therein sought to set aside the deed on the ground of fraud, the particular acts of fraud charged being that defendant "falsely and fraudulently" represented to plaintiff that if he would deed the property to her she would "immediately reside with and take care of plaintiff as her own father, and be with him in sickness or distress, and in addition thereto defendant would attend to the renting and managing of said property, and apply the net proceeds of said property to his wants for and during the life of plaintiff; that in consideration of the said promise of said cohabitation of said defendant with him and of her caring for him as aforesaid continually up to his death, plaintiff made said deed." It is further alleged in the amended complaint that plaintiff relied upon the said promises so made, and was induced thereby to make and deliver said deed, and that "defendant has failed and neglected to execute or perform any of said promises or representations willfully and intentionally, and each and all said representations now remain wholly and entirely unfulfilled; that each and all said representations were made without any intentions of defendant to perform them or any of them."

The case was tried before the court and findings filed, in which a judgment was ordered and entered in favor of the plaintiff. The court found: "That said defendant promised said plaintiff, if he would make and deliver to her said deed to his said property, she would love and care for him during his life, and would during his life manage and care for the

property deeded, and receive the rents, issues and profits thereof, and turn the same over to him monthly. That plaintiff, reposing trust and confidence in defendant, and believing the promises and representations of defendant, and that she would keep and perform them, and would keep and perform the promises, covenants and conditions of said deed, did on the seventh day of March, 1905, execute, acknowledge and deliver to defendant said deed. That had plaintiff not believed said defendant would execute the said promises and representations he would not have made said conveyance.''

The court further found that plaintiff relied upon such promises and representations; that they were made by defendant with no intention of keeping or performing them, and that she has willfully failed and neglected to keep or perform said promises; that the value of the property is $10,000, and ''that defendant has not since the recording of said deed attempted to convert, nor has she ever converted, any of the income of said property to her own and exclusive use, nor has she at any time attempted to convert the income of said property to her own use.''

It is claimed that the evidence does not support the findings first above quoted, and we must so hold.

The defendant is the niece of the plaintiff, and the only daughter of his favorite sister, who died a few years before the deed was made. She was at that time but a mere schoolgirl about seventeen years of age. Plaintiff was an old man, aged about seventy years, residing with his tenant on the little ranch in Santa Clara county, having no wife and no children of his own. He had always been very fond of defendant from her childhood, and had often given her little presents and written to her and visited her at the home of her father. She had never, so far as the record shows, said anything to him in regard to having the deed made to her. It is conceded by plaintiff's counsel that there was no evidence of any acts of undue influence brought to bear upon plaintiff. Let us then examine the deed and the circumstances under which it was made. It was a solemn writing made by plaintiff, and delivered to defendant. It recites that it is made by ''Hermann Bretthauer, unmarried, to Johanna Maria Foley, a single woman, for and in consideration of the love and affection which the party of the first part hath and

beareth to the party of the second part, and also for her better maintenance and support, and for other good and valuable considerations not herein recited.'' Then follows a description of the little farm by metes and bounds, and then the following clause:

''In trust never-the-less that the said party of the second part during the life time of the said party of the first part shall receive the net rents, issues and profits of the said property, and turn over the same monthly in United States gold coin to the said party of the first part on the first day of each and every month during the life time of the said party of the first part, and by the term 'net rents, issues and profits' in this instrument expressed it is intended that after paying all sums necessary for repairs, improvements, taxes, water rates and other expenses connected with said property the net amount and income above remaining in the hands of the said second party shall be paid over to the said first party, and further it is intended by this instrument that the said second party shall hold the title in fee as trustee and in remainder with the life estate reserved to the said first party, and upon the termination of the life of the said party of the first part this trust shall terminate, and the title in fee to the whole of the above real estate shall rest absolutely in the said party of the second part, and this grant and gift is made for the sole purpose of vesting the title in fee in the said party of the second part subject to a life in and for the benefit of the said party of the first part, and for the further purpose that upon the termination of the life of the said party of the first part the title in fee shall vest absolutely in said party of the second part.''

It is too plain to admit of argument that the deed conveyed the remainder to the grantee after the termination of the life estate retained to the grantor. It was further contemplated that the defendant might receive and collect the rents, issues and profits for the express use and benefit of the grantor during his lifetime, and that she might perhaps have claimed such right to the management of the property. But this clause, as interpreted by the circumstances and the conduct of the parties in relation thereto, was evidently intended as a precaution in case the grantor should, by reason of illness or the infirmities of old age, become incompetent to control and manage the property. Such meaning is evident from

the fact that the plaintiff, at the time the deed was made, was in the possession of the property and enjoying its rents, issues and profits. The defendant was a schoolgirl living in San Francisco, and evidently inexperienced as to the renting, management or conducting of a farm. Plaintiff afterward, and during the following year, rented the land to a tenant on shares, but retaining the right to live and occupy a room in the little dwelling-house upon the premises. He managed the property after the deed was made as he had done before, and received every cent of the income. The defendant never asked for any income, nor did she ever claim the right to the possession, control or management of the property. Plaintiff never requested her to manage the property or to collect the rents. He wrote several letters to her afterward and up to the time of the earthquake and fire which occurred in San Francisco in April, 1906, but in no letter did he even speak of or mention the fact that he desired the defendant to live with him or to collect the rents. After the fire of April, 1906, had burnt the home of defendant and her father in San Francisco, plaintiff wrote to them to come to his home, and reside, and they did so, living with plaintiff several months during the summer of 1906. During all this time plaintiff never even hinted to defendant that he desired her to collect the rents for him. In fact plaintiff testified upon the stand that he had never requested the defendant to collect the rents or to manage the property. It therefore appears plain that plaintiff was not in any manner injured, defrauded or deceived by the so-called trust clause in the deed. He elected to attend to his little farm himself, and he did so, with no demand made upon defendant to do anything in the way of collecting rents. In fact it would seem indeed strange if the plaintiff, an experienced farmer, while active and possessing his faculties, should have turned over the management of the farm with which he was familiar to a young girl of no experience who had been reared in the city. We apprehend that no such thought ever entered plaintiff's mind until he concluded that he wanted to call back the estate which he had deliberately given to his niece.

The claim that it was a part of the consideration for the deed that the defendant should go on the place and live with plaintiff is equally without merit or support in the evidence.

The court found that the defendant, as a part of the consideration for the deed, promised plaintiff that she would "love and care for him," and that she has failed and neglected to do so. The claim as to loving and caring for plaintiff, whatever that may mean, is not in the deed. The plaintiff had recited in the deed that in consideration of love and affection he made it, but evidently his love and affection, although expressed in writing, is not so great as it was when he made the deed, or it has settled upon some other object. Whether plaintiff's change of affections was caused by the prolonged visit of defendant and her father at plaintiff's house during the summer of 1906 is not for us to say. The words "care for" are of very little significance. It is not found that defendant ever refused to perform any act of kindness to plaintiff; that he was ever sick and afflicted and she neglected to comfort him, or that he was ever hungry and she neglected to feed him. In fact plaintiff at all times controlled the property, collected about $1,000 per year income, and besides had plenty of money on hand for his personal needs. As to whether the defendant neglected to love him or not we cannot say, but often people are not loved because of their conduct. In any event it was not "nominated in the bond" that she was to love him.

Equally without merit is the claim that the defendant, as an inducement to procure the deed, promised to go on the ranch and live with plaintiff. In all the correspondence and the letters from plaintiff to defendant after the deed was executed up to the time that the action was commenced we find no mention by plaintiff of any such promise, nor even a request by plaintiff that defendant would come and live with him, save the request to defendant and her father after the fire of April, 1906. In fact, the little cottage was for most of the time occupied by plaintiff's tenants, and only one room, or one room and the kitchen, reserved for plaintiff's personal use. When the plaintiff was upon the witness-stand, and the subject was first mentioned to him as to the arrangements, and as to where the defendant was to live, and the question was asked whether she was to live "with her father or elsewhere," the plaintiff answered, "I could not state where she intended to stay. I supposed she would come with him and stay with me." It is true that afterward, when

plied with questions that were leading and suggestive, the plaintiff said the defendant was to stay with him and take care of him, but in the face of the other evidence in the record the statement is entitled to little significance. The plaintiff nowhere said that the defendant promised, as a consideration for the deed, that she would go on the ranch and live with him. The defendant says that she never made such promise. Her father was present when the deed was made, and he testified that he never heard such promise. Mr. Barry, the attorney who drew up the deed and who had a private consultation with the plaintiff, testified that he heard no such promise and no mention made of such promise. Mr. Treat, before whom the deed was acknowledged, heard of no such arrangement. In the original complaint, verified by plaintiff, he swore that defendant "had seized upon and occupied the property described in said deed, and is attempting to convert the income thereof to her own use." It is not even hinted in the complaint that defendant had failed to keep her alleged parol promise to live with defendant, or that she had been guilty of any fraud of any kind or in any manner or shape. And not only this, but the court has not found that any such promise was made, but only that the defendant promised to "love and care" for plaintiff. The plaintiff, in order to have obtained relief against the solemn deed made by him, was required not only to allege the acts constituting fraud, but to prove them by clear and satisfactory evidence. The law is sometimes said to abhor fraud; and fraud will never be presumed. It has been defined as the successful employment of cunning, deception or artifice used to circumvent, cheat or defraud another. It is the doing by one's self, or inducing another to do, such things as lead the opposite party into error. The intention to deceive is one of its main characteristics. It is generally brought about by misrepresentation, either by word or deed, as to material facts by which the confiding party is misled to his injury. It may be perpetrated by the concealment of material facts which the party to be benefited was, in good conscience and equity, bound to disclose. When fraud is proven, it vitiates all contracts upon the principle that the party deceived never consented.

The case here is not like a case where an aged and infirm person, upon an express promise, has conveyed away his whole property to a child, relative or friend, upon and in consideration of being taken care of and fed, clothed and furnished a home for the remainder of his life, and the person so receiving the estate, after having induced the owner to make himself penniless relying upon such promise, turns ingrate, fails to keep his promise, and casts the grantor out on the world a beggar. In such case the courts have well said that there is no magic or solemnity about a deed that it cannot be laid aside. The rule is that a deed cannot be set aside for light or trivial reasons, nor because the grantor has changed his mind. The reason for the rule is apparent. When a party has signed and delivered a conveyance, it must be treated as a serious matter. As said by the late Judge McFarland in *Tillaux* v. *Tillaux,* 115 Cal. 668, [47 Pac. 692] : "It is not a thing to be played with, or reclaimed at pleasure, as a hawk in falconry." It was said in *Soberanes* v. *Soberanes,* 97 Cal. 144, [31 Pac. 911] : "Transactions beyond any question should be thoroughly sifted, but a voluntary deed, free from any imputation of undue influence, executed by a mother with her eyes open, cannot be set aside merely upon the ground that an honorable man would not accept a gift which strips his mother of all her property and leaves her dependent on the charity of others. A person in the possession of his faculties has the right to dispose of his property as he sees fit, upon the principle stated by Lord Nottingham, that if he will improvidently bind himself up to a voluntary deed he need not expect the court to break the fetters put upon himself by his own folly. To hold that gifts, voluntarily made and with full knowledge of the facts and of the nature and effect of the transfer, should be set aside because the donor had divested himself of his property would be to establish a rule that no man can make a voluntary disposition of his estate except by will."

In this case we see no evidence of any fraud upon the part of the defendant. Plaintiff disposed of his property to his niece on account of and in consideration of his love and affection, and she is still his niece. His love and affection may have gone, but he stated that as the consideration when he made the deed, and if it was a good consideration then it

is good now.  He retained a life estate for his declining years, which is perhaps all he will ever need.  Having voluntarily and deliberately made the deed, and the deed having been made while he was in possession of all his faculties, he cannot now ask the aid of the court to relieve him of a condition brought about by his own deliberate and voluntary act.  Courts are instituted for the purpose of enforcing rights, redressing wrongs, compelling specific performance of a certain class of contracts, and of granting relief upon the ground of fraud, duress or mistake when such fraud, duress or mistake is clearly proven, but not for the purpose of annulling or overhauling contracts or deeds improvidently made.

The order denying a new trial is reversed.

Hall, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 12, 1911.