[Civ. No. 4724.　First Appellate District, Division One.—February 18, 1924.]

## ANTONIO BOICELLI, Respondent, v. MARY GIANNINI, Appellant.

[1] QUIETING TITLE — GIFT DEED — UNDUE INFLUENCE — FRAUD — EVIDENCE.—In this action to quiet title to certain real property which plaintiff claimed under and by virtue of a deed of gift from his father, but which defendant claimed under a subsequently executed grant, bargain, and sale deed from the father, the evidence repelled any presumption that undue influence was used by any person whatsoever, and fully supported the finding of the trial court that the execution of the deed to plaintiff was not accomplished by influence and fraud.

[2] ID.—GIFT BY AGED PARENT TO CHILD—UNDUE INFLUENCE—EQUITY.—Where an aged parent makes a gift of real property to one of his children, to the exclusion of another child, a court of equity will closely scan and scrutinize the transaction in order to ascertain whether any undue influence had been exercised over the parent to acquire his confidence, and whether the confidence so acquired has been abused or betrayed.

[3] ID.—GIFT BY FATHER TO SON—RIGHT TO SET ASIDE.—An absolute gift of land made by a father to his son freely and voluntarily in the execution of a purpose conceived by him so to dispose of the property, without the exercise of any fraud on the part of the son, and with full understanding on his part of all the facts and the effect of such a transfer, cannot afterward be set aside.

[4] ID.—DELIVERY TO THIRD PERSON—PRESENT TITLE—POWER TO RECALL.—Where one makes a conveyance of property and places it in the hands of a third party, to be delivered to the grantee named in it on the death of the grantor, such delivery is effectual to pass a present title to the property to the grantee, if the intention of the grantor is to make such delivery absolute and place it beyond his power thereafter to revoke or control the deed; and, after such delivery, it is beyond the power of the grantor to recall his act, and his attempt to do so avails him nothing.

[5] ID.—CONVERSATION THROUGH INTERPRETER—HEARSAY.—An interpreter who is selected by two persons speaking different languages

4. Right of grantor to revoke deed delivered to stranger to be delivered by him to grantee after grantor's death, notes, 4 L. R. A. (N. S.) 816; 9 L. R. A. (N. S.) 317.

Efficacy of deposit of deed by grantor with third person to be delivered after grantor's death, notes, Ann. Cas. 1915C, 378, 385, 388.

as a medium of their communication with each other is regarded as their joint agent for that purpose, and the statements of what they say in the presence of each other are regarded as the statements of the persons themselves, and such statements of the interpreter are admissible as original evidence and are in no sense hearsay.

[6] ID.—KNOWLEDGE OF PRIOR CONVEYANCE—BONA FIDE PURCHASER. In this action to quiet title to certain real property which plaintiff claimed under and by virtue of a deed of gift from his father, but which defendant claimed under a subsequently executed grant, bargain, and sale deed from the father, the evidence showed that defendant had complete knowledge of the acts of the father and of his disposition of the property prior to the alleged conveyance to her; and, therefore, the claim of defendant that she was a *bona fide* purchaser was without merit.

APPEAL from a judgment of the Superior Court of Santa Clara County. F. B. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

Owen D. Richardson and John P. Fitzgerald for Appellant.

Heller, Ehrman, White & McAuliffe for Respondent.

TYLER, P. J.—This action was one brought to quiet title to certain real property situated in Santa Clara County consisting of a ranch of some six acres. Both parties claim through a common ancestor, their father, Augustino Boicelli.

In support of his title plaintiff relied upon a deed of gift executed and delivered in escrow. Defendant claimed that this deed was procured by undue influence and fraud, and she charged in her pleadings that her father was of unsound mind at the date of its execution, and that it was, therefore, void. In her cross-complaint she asserted title through a grant, bargain, and sale deed executed by her parent to her two months before his death and some four years after the conveyance of the property to plaintiff. The consideration of this last alleged transfer consisted of her promissory notes.

Two trials were had. The first resulted in a judgment in favor of defendant. A motion for a new trial was made

and granted, and judgment thereafter went in favor of plaintiff and this is an appeal therefrom.

The principal ground relied upon for a reversal is that the evidence is insufficient to overcome the presumption of undue influence that attaches to a conveyance by a parent of advanced age when made to one of his children to the exclusion of others. This contention necessitates a review of the evidence, which is substantially as follows:

Augustino Boicelli had three children, Antonio Boicelli and Mary Giannini, the parties to this action, and another daughter, Virginia Pedemonte. On October 6, 1915, in the absence of and without the knowledge of his children Boicelli consulted one De Mattei, a business man of San Jose, with reference to the disposition of his property. De Mattei had been his friend and adviser for some thirty-five years. Boicelli at this time was of advanced age, being eighty-two years old. He informed De Mattei that he "wanted to make out some papers, and that he desired to give certain real property to his son Antonio, and also certain other property to Mrs. Pedemonte, reserving to himself, however, the income thereof during his lifetime." De Mattei and Augustino proceeded to the offices of one Cavallaro, a lawyer familiar with the Italian language, who was advised by Augustino as to his intention. Cavallaro suggested a transfer of the property by means of deeds placed in escrow. The legal effect of such a transfer was fully explained to Augustino. He was informed that property so conveyed would pass beyond his control and that he would thereafter have no title in the same. This mode of transfer was satisfactory to him, so he stated, his desire being to simply retain the income in the property during his lifetime. He further stated that he wished to prevent expenses of administration. Deeds were accordingly prepared by Cavallero, and they were signed and acknowledged by Boicelli. Escrow instructions were also prepared. The documents were left in the office of the attorney, but no delivery with intent to pass title was made at that time, Boicelli expressing the desire that he wanted his boy to see them.

Subsequently, on November 17, 1915, the son—who had no previous knowledge of his father's acts—was informed concerning the same. He examined the prepared instruments, but not knowing Cavallaro he took them to James L. Atteridge, an attorney in San Jose, with whom he was ac-

quainted, to see if they were properly executed. The father and De Mattei were present at this meeting. The elder Boicelli was unable to speak or understand the English language, and De Mattei acted as interpreter for him and the attorney. Boicelli was asked by Mr. Atteridge what he wanted to do with his property, and he stated that he desired to deed certain portions thereof to his two children, Virginia Pedemonte and Antonio Boicelli, in such a way that he would be permitted to live on the property but that title thereto would be in the children mentioned. They were not to go into enjoyment of the same until his death. Mr. Atteridge thereupon examined the instruments prepared by Mr. Cavallara and he advised Boicelli that they were imperfectly drawn and invalid, and would not operate to accomplish the intended purpose, as title would not pass thereunder. It was then explained to the grantor that the effect of delivering a deed in escrow was to part with all dominion and control over the same, and that he would have no power thereafter to withdraw or recall it; that title would pass by virtue of delivery and he would thereby be divested of ownership, and his only remaining interest thereafter would be his right to the reserved possession and enjoyment of the rents and profits until his death. The grantor stated that such was his desire. Mr. Atteridge thereupon prepared escrow instructions and other documents relating to the transaction.

The grantor had expressed an apprehension that the reserved income might prove insufficient for his support. It was thereupon agreed that in this event the grantees, upon demand, should advance and pay to the grantor a sum not to exceed three hundred dollars per annum from the date of the agreement. It may be stated, in passing, that this contingency never happened, and no demand for the fulfillment of this condition was ever made.

Boicelli was informed that accumulations might possibly accrue, and he was advised to make a will. He was asked whether or not he desired to make any provision for his daughter Mary Giannini, defendant herein, and he replied that if she was to receive anything Antonio, the son, would have to give it to her. It was then agreed that the son should execute a note in her favor for the sum of five hundred dollars, payable upon the death of the grantor, and that like notes

should be executed to each of her children for the sum of one hundred dollars. The notes were accordingly executed, and the grantor at the same time made a will, under the terms of which he left the residue of his estate in equal shares to his three children, naming them. He then executed and delivered to De Mattei a deed in escrow in favor of plaintiff to the property in question, with instructions to hold the same until his death, and then to deliver the same to his son. A like conveyance was made in favor of Virginia Pedemonte to a distinct parcel of land, now the subject of a second and independent action, there having been a severance of the two actions since the first trial.

About a year and a half after the delivery of the deeds in escrow the grantor sought to regain possession of the same from De Mattei, but without success. Later and on November 14, 1919, the grantor, by grant, bargain, and sale deed, conveyed to his daughter Mary Giannini, defendant herein, the property in question, and she gave her promissory notes for the entire purchase price. The property was valued in the sum of eight thousand dollars, and one of the notes was for seven thousand dollars, interest and principal being payable six years after date, a period when the father, had he lived, would have been ninety-two years old. Shortly thereafter Boicelli died, his death occurring in January, 1920.

From this evidence it is manifest that if no undue influence was practiced upon the grantor in the original conveyances the second attempted transfer is of no validity or effect unless it can be said that defendant acquired the property as an innocent purchaser and without notice of the previous transfer.

Upon the subject of undue influence we are of the opinion that the evidence clearly shows that there is an entire absence or suggestion of this element in the case. The plaintiff never knew of any intention on the part of his father to make the conveyance to him at the time the deeds were originally prepared and acknowledged, and he did not learn of his action until some time thereafter, when the original plan was carried out in its modified form, under which defendant, at plaintiff's suggestion, was benefited.

[1] We do not deem a further review of the evidence necessary, as it speaks for itself. It is clear therefrom that

the grantor took independent advice, and that his act was free and voluntary, uninfluenced in any manner by the plaintiff or anyone else. The evidence repels any presumption that undue influence was used by any person whatever, and fully supports the finding of the trial court that the execution of the deed to plaintiff was not accomplished by influence and fraud.

[2] We are not unmindful of the principles of equity jurisprudence with relation to such transactions. The principles are plain and well settled in this state. A court of equity will closely scan and scrutinize transactions of this character in order to ascertain whether any undue influence has been exerted over an aged parent to acquire his confidence, and whether the confidence so acquired has been abused or betrayed.

In *Soberantes* v. *Soberantes,* 97 Cal. 140 [31 Pac. 910], it is held that although transactions between aged and enfeebled parents and one of several children, whereby a parent conveys his entire estate to such child to the exclusion of other children dependent upon his bounty, will be watched and scrutinized with jealousy, and will generally be held presumptively void upon a showing of confidential relations, without a showing by the donor of any actual imposition upon him, and will be set aside upon the discovery of the least fraud; yet where it is shown by the donee that the gift was freely and voluntarily made and no imposition practiced, the conveyance will not be set aside. It is there declared that a person in possession of all his faculties has a right to dispose of his property as he sees fit, and to hold otherwise would be to establish a rule that no man could make a voluntary disposition of his estate except by will. [3] An absolute gift of land made by a father to his son freely and voluntarily in the execution of a purpose conceived by him so to dispose of the property, without the exercise of any fraud on the part of the son, and with full understanding on his part of all the facts and the effect of such a transfer, cannot afterward be set aside. (*De Arellanes* v. *De Arellanes,* 151 Cal. 443 [90 Pac. 1059]; *Estate of Anderson,* 185 Cal. 701 [198 Pac. 407]; *Bretthauer* v. *Foley,* 15 Cal. App. 19 [113 Pac. 356].)

Nor does the fact that deceased attempted to recall the deed in any manner affect the question. [4] Where one

makes a conveyance of property and places it in the hands of a third party, to be delivered to the grantee named in it on the death of the grantor, such delivery is effectual to pass a present title to the property to the grantee, if the intention of the grantor is to make such delivery absolute and place it beyond his power thereafter to revoke or control the deed. Where a delivery is made under these circumstances it is fully operative and effective to vest a present title in the grantee, the grantor retaining only a life estate in the property, and the third party or depositary holds the deed as a trustee for the grantee named therein (*Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]).

Here there is no question that an absolute delivery had been made; and this being so it was byond the power of the grantor to recall his act, and his attempt to do so availed him nothing (*Smith* v. *Smith,* 173 Cal. 730 [161 Pac. 495]).

[5] Appellant insists that the trial court erred in admitting the testimony of the witness Atteridge as to what he told the grantor and what the grantor said in reply, it being hearsay. This claim is based upon the fact that the information was imparted and received through an interpreter.

There is no merit in this contention. The grantor did not understand and was unable to converse in the English language. An interpreter who is selected by two persons speaking different languages as a medium of their communication with each other is regarded as their joint agent for that purpose, and the statements of what they say in the presence of each other are regarded as the statements of the persons themselves (*Kelly* v. *Ning Yung Ben. Assn.,* 2 Cal. App. 461, 467 [84 Pac. 321] ; 10 R. C. L., p. 930), and such statements of the interpreter are admissible as original evidence and are in no sense hearsay (2 Jones' Commentaries on Evidence, sec. 267; *Commonwealth* v. *Vose,* 159 Mass. 393 [17 L. R. A. 813, 32 N. E. 355]).

We are cited to *People* v. *Jan John,* 137 Cal. 220 [69 Pac. 1063], *People* v. *Petruzo,* 13 Cal. App. 569 [110 Pac. 324], and *People* v. *Ong Git,* 23 Cal. App. 155 [137 Pac. 283], as opposing this rule. It will be noted that these are criminal cases. Different considerations control in criminal trials. There the interpreter is not the agent of the parties

but the officer of the court. The cases have no analogy (2 Jones' Commentaries on Evidence, p. 481).

Moreover, the testimony of Atteridge concerning the details and surrounding circumstances of the execution and delivery of the deeds was cumulative and in full accord with other testimony upon the subject which in itself is sufficient to support the judgment.

[6] The suggestion that defendant was a *bona fide* purchaser is without merit. The evidence shows that she had complete knowledge of the acts of the grantor and his disposition of the property as early as the year 1918, which was prior to the alleged conveyance to her.

In conclusion, it may be stated that the evidence is amply sufficient to support the conclusion of the court below that the conveyance here involved was the voluntary act of the grantor free from any undue influence. This being so, it follows from what has been said that the judgment should be and it is hereby affirmed.

St. Sure, J., and Short, J., *pro tem.,* concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 15, 1924.

All the Justices concurred.