[No. S093476. Feb. 25, 2002.]

AZUCENA CORREA, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party In Interest.

**COUNSEL**

Carl C. Holmes, Public Defender, Deborah A. Kwast, Chief Deputy Public Defender, Kevin Phillips, Assistant Public Defender, and Donald E. Landis, Jr., Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, Stephan Sauer and Brian F. Fitzpatrick, Deputy District Attorneys, for Real Party in Interest.

Steve Cooley, District Attorney (Los Angeles), George M. Palmer, Head Deputy District Attorney, and Shirley S. N. Sun, Deputy District Attorney,

for Appellate Committee of the California District Attorneys Association as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**GEORGE, C. J.**—In the present case, investigating officers testified at defendant's preliminary hearing regarding extrajudicial statements made by the Spanish-speaking victim of the alleged crimes and by another Spanish-speaking witness. The officers did not understand Spanish, but received the statements of the victim and the witness through contemporaneous translations provided by apparently unbiased bystanders during the officers' investigation of the crimes. The persons who acted as translators during these interviews also testified at the preliminary hearing regarding their language skills and the circumstances of the translation.

Defendant acknowledges that, by virtue of provisions adopted as part of Proposition 115 more than a decade ago, qualified police officers generally are permitted to relate the statements of out-of-court declarants at a preliminary hearing. She contends, however, that because of the role played by the translators during the out-of-court interviews, the officers' testimony in the present case constituted inadmissible multiple hearsay. The officers were recounting the statements of the translators, she contends, not those of the original declarants. The Court of Appeal agreed with defendant's contention and held that the officers' testimony regarding the statements should not have been admitted into evidence. We granted review to consider the validity of the conclusion reached by the Court of Appeal.

For the reasons discussed below, we disagree with the Court of Appeal's determination. As we shall explain, the weight of recent authority in this and other jurisdictions does not treat the participation of a translator in such circumstances as interposing a layer of hearsay. Rather, a generally unbiased and adequately skilled translator simply serves as a "language conduit," so that the translated statement is considered to be the statement of the original declarant, and not that of the translator. Because we find this analysis sound, we overrule early opinions of this court to the extent they characterize such translations as constituting hearsay, and we reverse the judgment of the Court of Appeal.

I

After a complaint was filed charging petitioner Azucena Correa (hereafter defendant) with various crimes, a preliminary examination commenced on

February 16, 2000. Michelle Bland, a police officer employed by the Westminster Police Department, testified that she was called for assistance in a domestic disturbance on November 30, 1999. At the scene, Officer Bland spoke with Patricia Gil. Over defendant's hearsay objection, Officer Bland testified as to Patricia's statements. Defendant's hearsay objection was based on the circumstance that Patricia spoke only Spanish and that the officer received her statement only with the assistance of a neighbor, Higinia Garcia, who translated Patricia's statements into English and translated the officer's questions into Spanish.

According to Officer Bland's testimony at the preliminary hearing, Patricia stated that defendant and Miguel Gil (Patricia's brother) had been arguing, that defendant scratched Miguel's face and hit him in the mouth with a ratchet wrench, and that Patricia observed defendant run inside a house and return with a small kitchen knife. Upon further questioning by the officer, Patricia stated that she saw defendant place the knife in her back pocket, saw her approach Miguel, who was holding Patricia's son, heard defendant state, "You won't dare hit me," and then saw defendant swing the knife at Miguel. Miguel was holding the child in front of him and moved away from the blow. Officer Bland also testified that Patricia said that she (Patricia) had tried to intervene, but had been pushed away by defendant. Patricia also said she later observed that Miguel had suffered a stab wound.

Higinia Garcia also testified at the preliminary hearing. Higinia stated that she was born in Mexico, came to this country at the age of 10 years, attended school here, and currently was employed by a school district in a position requiring her to speak English. Higinia spoke both Spanish and English at home. She testified at the preliminary hearing without an interpreter, but stated that she was uncertain whether she spoke English fluently. The magistrate, however, stated that Higinia appeared to be fluent in English.

Higinia testified that Patricia, a stranger to her, had approached her to ask to use her telephone. Higinia testified briefly regarding Patricia's demeanor at the time of the incident. Higinia also testified that she had understood Patricia perfectly and believed she had provided a word-for-word translation. At the time of the preliminary hearing, Higinia no longer recalled exactly what Patricia had said or exactly what questions the officer had asked. Higinia testified that she had translated faithfully.

Officer Michael Ogawa, also of the Westminster Police Department, testified at the preliminary hearing that he had interviewed Miguel, the victim of the stabbing, at the scene. Again over defense objection, Officer Ogawa was permitted to testify regarding Miguel's statements, despite the

circumstance that the officer spoke only English and Miguel spoke only Spanish. Officer Ogawa testified that their communication took place through the translation provided by Hector Garcia, also a neighbor (and apparently the son of Higinia Garcia). Officer Ogawa testified that Miguel said that he (Miguel) had been in an argument with defendant near defendant's mother's home, and that defendant had retreated into a house, returned with a knife, and stabbed him. Officer Ogawa testified that he personally had observed a stab wound as well as scratches and cuts on Miguel's face and neck. Miguel and his sister, Patricia, who also spoke to Officer Ogawa through the same translator, told the officer where to find defendant. When Officer Ogawa contacted defendant, she explained to him (apparently without the assistance of a translator) that Miguel was her boyfriend and stated she was present when he was stabbed.

Hector Garcia also testified at the preliminary hearing. He stated that he was a native English speaker, but that he was also fluent in Spanish because his mother spoke that language in their home. Hector testified that he had translated accurately. He reported that he had been approached by a woman he had never met (apparently Patricia), who asked to use his telephone. He granted permission and later observed a man (apparently Miguel), also a stranger, who appeared with a bleeding wound on his left side. Then two police officers arrived, and he translated for them at their request. He did not add anything or leave anything out, although he may not have given a word-for-word translation.

It was stipulated that a blood test performed on Miguel shortly after the incident indicated that his blood-alcohol level was .24 percent. In connection with defendant's motion to reduce the assault, child endangerment, and willful corporal injury charges to misdemeanors pursuant to Penal Code section 17, subdivision (b), defense counsel asserted that Miguel previously had been convicted of domestic abuse committed upon defendant, that he had initiated the dispute that resulted in the current charges against defendant, and that at the time of the charged incident, there was an outstanding warrant for Miguel's arrest for his failure to comply with a condition of probation that he attend a "batterer's treatment program." The court denied the motion to reduce the charges to misdemeanors.

After defendant was held to answer following the preliminary hearing, an information was filed charging her with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] child endangerment (§ 273a, subd. (a)), and battery against a domestic companion (§ 243, subd. (e)(1)), a misdemeanor. In connection with the assault charge, the information also alleged personal use of a deadly weapon within the meaning of section 12022, subdivision (b).

[1]Statutory references are to the Penal Code, unless otherwise indicated.

Defendant brought a motion to set aside the information (§ 995), contending that the testimony of Officers Bland and Ogawa at the preliminary hearing, relating the translated statements of Patricia and Miguel, was inadmissible because the translation added a layer of hearsay for which there exists no hearsay exception. Without this testimony, it was alleged, there was insufficient evidence upon which to hold defendant to answer. The trial court denied the motion to set aside the information, determining that the translation did not add a layer of hearsay but that the translators simply served as a conduit conveying Patricia's and Miguel's statements to the officers.

Defendant filed a petition for writ of mandate and/or prohibition and a request for a stay in the Court of Appeal, which issued a stay and an order to show cause. After briefing and oral argument, the appellate court issued an opinion determining that the testimony of the English-speaking officers, in which they recounted the translated statements of the out-of-court declarants who spoke Spanish, constituted multiple hearsay that was inadmissible at the preliminary hearing. The Court of Appeal held that without this evidence, there was insufficient evidence to hold defendant to answer, and directed the superior court to vacate its prior order and enter a new order granting the motion to set aside the information. We granted the People's petition for review. For the reasons that follow, we conclude that the judgment of the Court of Appeal should be reversed.

## II

In general, hearsay evidence is inadmissible. Evidence Code section 1200 provides, in pertinent part: "(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. [¶] (b) Except as provided by law, hearsay evidence is inadmissible."

Special rules apply to the admission of hearsay evidence at a preliminary hearing in a criminal case. In June 1990, an initiative measure designated as Proposition 115 was adopted by the voters. Along with other provisions not relevant here, the measure added the following language to the state Constitution: "In order to protect victims and witnesses in criminal cases, hearsay evidence shall be admissible at preliminary hearings, as prescribed by the Legislature or by the people through the initiative process." (Cal. Const., art. I, § 30, subd. (b).) The measure also included statutory provisions, one of which directed that notwithstanding section 1200 of the Evidence Code, which renders hearsay generally inadmissible, at a preliminary hearing "the finding of probable cause may be based in whole or in part upon the sworn

testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted." (Pen. Code, § 872, subd. (b).) The electorate, imposing a limitation on this rule, however, provided that the only law enforcement officers qualified under this provision to testify regarding hearsay statements are those who "shall either have five years of law enforcement experience or have completed a training course . . . which includes training in the investigation and reporting of cases and testifying at preliminary hearings." (*Ibid.*)

We have emphasized that after the passage of Proposition 115, the preliminary hearing now serves a limited function. No longer to be used by defendants for discovery purposes and trial preparation, it serves merely to determine whether probable cause exists to believe that the defendant has committed a felony and should be held for trial. (*Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1080-1082 [2 Cal.Rptr.2d 160, 820 P.2d 262] (*Whitman*).)

In interpreting the provisions of Proposition 115, this court concluded, as a matter of constitutional and statutory construction, that the intent of the measure was to relieve crime victims and witnesses of the obligation to testify at the preliminary hearing, but it was not to authorize the magistrate to make a probable cause finding based on the testimony of an officer—even one with the proper qualifications under section 872—who neither was involved in the investigation nor had any knowledge of the circumstances under which the out-of-court statement was made. Such an officer may not, at the preliminary hearing, simply read a police report that was prepared by an absent investigating officer. (*Whitman, supra,* 54 Cal.3d at pp. 1072-1073.) Rather, the testifying officer who is relating an out-of-court statement must have "sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (*Ibid.*) We pointed out that section 872's requirements of training and experience are intended to enhance the reliability of the hearsay testimony, and "contemplate[] that the testifying officer will be capable of using his or her experience and expertise to assess the circumstances under which the [out-of-court] statement is made and to accurately describe those circumstances to the magistrate so as to increase the reliability of the underlying evidence." (*Whitman, supra,* 54 Cal.3d at p. 1074.)

■ In the present case, by virtue of Proposition 115 Officers Bland and Ogawa were permitted to testify regarding out-of-court statements. They *were* the investigating officers. They possessed the qualifications set forth in section 872, subdivision (b). They observed the circumstances under which

the out-of-court statements of Patricia and Miguel were made and could assist the magistrate meaningfully in evaluating the reliability of those statements. In addition, they observed the circumstances under which the translations provided by Higinia and Hector were made, and could assist the magistrate meaningfully in evaluating the reliability of the witnesses' statements as translated—not by assessing the accuracy of the translations themselves, but by describing any uncertainty or bias on the part of the translators as might be apparent from their demeanor. The officers also could evaluate the apparent unfamiliarity or lack of relationship of the translators with the declarants, a circumstance that is relevant to the issue of bias. In reliance on the translated statements, the officers were able to discover defendant's whereabouts, and the officers' own observations regarding the injuries suffered by Miguel corroborated elements of the translated statements. Under these circumstances, the officers had sufficient knowledge of the circumstances under which the statements were made and under which the translations were performed to describe accurately those circumstances to the magistrate and aid that judicial officer in evaluating the reliability of the evidence. It is also significant that the translators actually testified at the preliminary hearing. Both evidently were bilingual, although they had not previously served in an official capacity as interpreters, and it was apparent that they had no bias against or in favor of defendant or the victim.

Under all of these circumstances, and putting aside for the moment defendant's claim that the officers actually testified as to *multiple* layers of hearsay, the testimony of the officers met the requirements for admissibility under the provisions of Proposition 115.

### III

Defendant objects that although the provisions of Proposition 115 described above permit the admission of one level of hearsay, they do not sanction the admission of multiple hearsay. Despite the circumstance that the statements of Patricia and Miguel might have been admissible had they been made to Officers Bland and Ogawa in English, the translations, defendant contends, represent a separate level of hearsay that is not made admissible by Proposition 115. Defendant claims the officers were testifying as to what the *translators* stated Patricia and Miguel were relating, and in this situation it was the translators and not the witnesses who were the declarants. She urges that although in *Whitman, supra,* 54 Cal.3d 1063, we determined that hearsay was admissible in certain circumstances at the preliminary hearing, we were careful to explain that our discussion was limited to a single layer of hearsay.

The Court of Appeal, agreeing with defendant's claim, determined that *two* levels of hearsay are involved when an officer testifies at a preliminary

hearing regarding the substance of what a declarant said through a translator. Distinguishing the *Whitman* case, it stated: "In such cases the officer is not conveying a third party's information from a report but repeating information from third parties as orally reported to them." According to the Court of Appeal, the officer may be able to describe what he or she has observed during investigation but, because of the language barrier, cannot convey the declarant's words. The officer can relate only what an out-of-court declarant (the translator) stated that another out-of-court declarant has said—which amounts to double hearsay, in the view of the Court of Appeal.

It is true we have stated that although Proposition 115 sets forth an exception to the hearsay rule for one level of hearsay, the measure "did not purport to create a similar exception for the multiple hearsay rule . . . ." (*Whitman, supra*, 54 Cal.3d at p. 1074.) The premise that translation necessarily adds a layer of hearsay, however, has not been accepted in recent cases in this and other jurisdictions, even in cases analyzing the point in the context of evidence received at a trial.

In *People v. Torres* (1989) 213 Cal.App.3d 1248 [262 Cal.Rptr. 323], for example, a criminal defendant was subjected to custodial interrogation, but because he spoke only Spanish and the interrogating officer spoke only English, the interview took place with the assistance of a translator. The interrogating officer testified at trial regarding the content of the defendant's statement, even though the officer had not understood the defendant's actual utterances. On appeal, the defendant contended that although the statement otherwise might be admissible as a statement against interest by a party, the interrogating officer's testimony constituted inadmissible hearsay because it simply recounted what the *translator* said the defendant had said. The Court of Appeal rejected this claim, stating: "When two persons speaking different languages select an interpreter as a medium of their communication, the interpreter is regarded as their joint agent for that purpose. Therefore, the statements of the interpreter 'are regarded as the statements of the persons themselves; and like any other admission may be shown by the testimony of any person who heard them . . . .' " (*Id.* at p. 1258.)

An earlier example is found in *Boicelli v. Giannini* (1924) 65 Cal.App. 601. In that case, a brother and a sister opposed each other in a quiet title action. The court determined that the out-of-court statements made by their father, who was the grantor of the property and who had died before trial, to the brother's attorney could be recounted at trial by the attorney, even though these statements had been made through a translator. The court declared that a translator selected by persons who speak different languages is regarded as a joint agent. The translator's statements "are regarded as the statements of the persons themselves." (*Id.* at p. 607.)

In instances in which courts treat a translator as being literally the agent of a party, the translated statement is attributed to the party and is admissible under the hearsay exception applicable to the admission of a party. (See *People v. Torres, supra,* 213 Cal.App.3d at p. 1258; *Kelly v. Ning Yung Ben. Assn.* (1905) 2 Cal.App. 460, 467; see also *United States v. Beltran* (1st Cir. 1985) 761 F.2d 1, 9 ["We find the [translated] statements . . . properly characterized as statements by the defendants. . . . [T]he prevailing view is that the translator is normally to be viewed as an agent of the defendant" (italics omitted)]; *United States v. Alvarez* (11th Cir. 1985) 755 F.2d 830, 859-860 [77 A.L.R.Fed. 613]; *United States v. Da Silva* (2d Cir. 1983) 725 F.2d 828, 831-832; *State v. Felton* (1992) 330 N.C. 619, 632-633 [412 S.E.2d 344, 353-354], overruled on other grounds in *State v. Jackson* (1998) 348 N.C. 644, 653-654 [503 S.E.2d 101, 107]; 2 Wharton's Criminal Evidence (15th ed. 1998) § 8:7, pp. 432-433; 6 Wigmore on Evidence (Chadbourn ed. 1976) § 1810, p. 376; *id.* (2001 supp.) § 1810, pp. 821-822; Annot., Admissibility of Testimony Concerning Extrajudicial Statements Made to, or in Presence of, Witness Through an Interpreter (1982) 12 A.L.R.4th 1016, 1020, 1022, §§ 3-4, and later cases (2001 supp.) p. 201; Annot., Interpreter or Translator as Party's Agent for Purposes of "Admission by Party-Opponent" Exception to Hearsay Rule (1994) 121 A.L.R.Fed. 611; 29A Am.Jur.2d (1994) Evidence, § 821, pp. 207-208; Lindie, *Inadequate Interpreting Services in Courts and the Rules of Admissibility of Testimony on Extrajudicial Interpretations* (1993) 48 U. Miami L.Rev. 399, 420-422 (Lindie).)[2]

Employing an image that we find useful in understanding the issue before us, many courts state that translation simply does not add a layer of hearsay when a translator acts as a "language conduit" so as to cause the statement to be fairly attributable to the declarant. In most cases, these courts hold, the statement simply is considered to be the statement of the original declarant, and not of the translator, so that no additional level of hearsay is added by the translation. (*U.S. v. Koskerides* (2d Cir. 1989) 877 F.2d 1129, 1135; see also *U.S. v. Martinez-Gaytan* (5th Cir. 2000) 213 F.3d 890, 892; *U.S. v. Garcia* (9th Cir. 1994) 16 F.3d 341, 344; *U.S. v. Nazemian* (9th Cir. 1991) 948 F.2d 522, 526 [121 A.L.R.Fed. 809]; *U.S. v. Lopez* (2d Cir. 1991) 937

---

[2]In this connection, we note that some courts have concluded that a party's intentional reliance on a person to act as a translator may constitute an *implied* authorization to speak for the party. (See *People v. Torres, supra,* 213 Cal.App.3d at p. 1259; *United States v. Da Silva, supra,* 725 F.2d at pp. 831-832; *State v. Felton, supra,* 412 S.E.2d at p. 355; Lindie, *supra,* 48 U. Miami L.Rev. at p. 424.) Courts have viewed the translator as the agent of a criminal defendant who makes an extrajudicial confession or admission, even when the translator is a government employee or has been selected by law enforcement officers. (*People v. Torres, supra,* 213 Cal.App.3d at p. 1259; *State v. Felton, supra,* 412 S.E.2d at p. 355.)

F.2d 716, 724; see Annot., *supra*, 12 A.L.R.4th 1016, § 8, and later cases, *supra*, pp. 201-204.)

One case frequently cited as the origin of the concept of the language conduit is *U.S. v. Koskerides, supra*, 877 F.2d 1129. That case involved a criminal prosecution for tax evasion. An Internal Revenue Service (IRS) agent testified at trial, recounting out-of-court statements of the defendant's deceased father-in-law regarding payments made to the defendant. The IRS agent spoke only English, and the father-in-law made his statement in Greek. The IRS agent secured the services of a translator employed by the American embassy. When the defendant objected that the IRS agent's testimony constituted multiple hearsay, the court disagreed. The father-in-law's statement was admissible as a statement against interest. Further, the court stated: "We reject appellant's contention that [the agent's] testimony was inadmissible as multiple hearsay. The interpreter was no more than a language conduit and therefore his translation did not create an additional layer of hearsay. [Citation.] The interpreter translated Kiriakides' [the father-in-law's] statements concurrently as made. There is nothing in the record to suggest that the interpreter had any motive to mislead or distort, and there is no indication that the translation was inaccurate. [Citation.] In addition, Eleni Kiriakides [defendant's mother-in-law] who was also present at the conversation, testified at trial and was fully subject to cross-examination." (*Id.*, at p. 1135.)

This concept of the language conduit has been applied in cases in which it is a defendant who has made an admission or confession through a translator. In *U.S. v. Lopez, supra*, 937 F.2d 716, for example, two defendants conversed in Spanish in the presence of a confidential informant about a drug transaction, and the informant was permitted to testify regarding their statements, although he did not understand Spanish. The informant's niece had been present during the conversation and had translated it for the informant. The court treated her as a language conduit, determining that there was no reason to doubt the accuracy of her translation—in part because both defendants spoke English and could have corrected her translation at the time, had they found it inaccurate. (*Id.*, at p. 724; see also *United States v. Alvarez, supra*, 755 F.2d at p. 860 [admitting incriminating statements of the defendant that were made in Spanish to an undercover agent and translated for his benefit by another undercover agent]; *United States v. Da Silva, supra*, 725 F.2d at p. 832 [admitting federal drug agent's testimony regarding translated incriminating statements made by the defendant in Spanish]; *State v. Felton, supra*, 412 S.E.2d at p. 354 [admitting testimony regarding the defendant's custodial confession that had been made through a translator for the deaf].)

Defendant claims that although the agency theory referred to in some of the above noted cases may justify the admission of an extrajudicial translation made by an agent of a *party*, that theory has not been extended to nonparties. (See Evid. Code, § 1222 [hearsay exception for authorized admissions of a party].) Defendant contends there is no traditional hearsay exception that renders admissible the extrajudicial statements of agents of *nonparties*.

Although some of the cases we have discussed speak of the translator as an agent of a party, the language-conduit concept is not limited to the hearsay exception applicable to the statements of the agent of a party. In *Koskerides* itself, the declarant was not a party, but instead was a person whose out-of-court statement was admissible as a statement against penal interest made by an unavailable witness. One state court has observed, in a case in which an investigating officer was permitted to testify regarding a crime witness's declaration made through a translator, that it was "unable to discern any reason why the justification for admitting the testimony where the translation emanates from a party to the action should not exist with equal force where the translated party is a witness, or how it supports limiting the rule solely to cases where the translated statement is that of a party to the action." (*State v. Patino* (1993) 177 Wis.2d 348, 370 [502 N.W.2d 601, 610].) "Absent a motive to mislead," the court continued, or to "distort, or some other indication of inaccuracy, [citations], when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay." (*Ibid.*; see also *DCS San. v. Occupational Saf. and Health Com'n* (8th Cir. 1996) 82 F.3d 812, 815-816 [whether by virtue of the agency theory or the language-conduit theory, a translation of a statement of an employee of a party, when the statement is otherwise admissible, for example as an employee admission, does not constitute an additional layer of hearsay].)

The language-conduit theory calls for a case-by-case determination whether, under the particular circumstances of the case, the translated statement fairly may be considered to be that of the original speaker. We agree with this theory and believe that the measured approach adopted by the Ninth Circuit Court of Appeals in *U.S. v. Nazemian, supra,* 948 F.2d 522, 525-527 (*Nazemian*) should be adopted to ensure that only translated statements fairly attributable to a declarant will be admitted.

In *Nazemian*, a defendant convicted of various drug trafficking offenses claimed that the admission at trial of the testimony of an undercover agent

for the Drug Enforcement Administration (DEA), regarding the defendant's statements made to the agent through a translator, violated the hearsay rule as well as the defendant's rights under the federal Constitution's confrontation clause. (*Nazemian, supra,* 948 F.2d 522.) The reviewing court disagreed, concluding that the statements should be treated as Nazemian's own admissions, and not as the hearsay statements of the translator. The court stated that: "The better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker." (*Id.* at p. 527.) The court should consider "a number of factors which may be relevant in determining whether the interpreter's statements should be attributed to the [declarant] . . . , such as which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated." (*Ibid.*)

In considering the defendant's claim that the translator was a friend of a DEA confidential informant who was involved in the prosecution of the defendant and was "aligned with the DEA," the court determined that the circumstance that a translator may be provided by the government is not dispositive, and observed that the defendant was unable to point to specific evidence suggesting that the translator was biased against her. (*Nazemian, supra,* 948 F.2d at p. 527.) Although the government did not present evidence regarding the translator's language skills, the court noted that they evidently were considered satisfactory over an extended period and for several meetings, adding that the defendant was unable to point to any instances in which the translation did not reflect what she had said. The court found that in the setting of the conversation—"an undercover drug negotiation where the DEA agent's goal was to persuade Nazemian of his authenticity and to arrange a drug transaction [—] there would not be any motive to mistranslate, even were the interpreter biased toward the DEA. Indeed, mistranslation potentially could have threatened the DEA's objectives. Finally, both the confidential informant and Ms. Nazemian took subsequent actions which were consistent with Agent Eaton's testimony as to the content of those conversations, providing additional evidence that the translations were accurate." (*Id.* at p. 528; see *U.S. v. Martinez-Gaytan, supra,* 213 F.3d at p. 892 [applying the *Nazemian* factors and finding under the particular circumstances that the translator was *not* a mere language conduit]; *U.S. v. Garcia, supra,* 16 F.3d at pp. 342-343 [applying the *Nazemian* factors]; *People v. Gutierrez* (Colo.Ct.App. 1995) 916 P.2d 598, 600-601 [same].)

Thus, the task of a court in determining whether to admit a contemporaneously translated statement is to "consider on a case-by-case basis whether

the translated statements fairly should be considered the statements of the speaker" (*Nazemian, supra,* 948 F.2d at p. 527), taking into account such factors as those outlined above. We observe that in the cases discussed above, the persons who provided the translation did not always testify, but we agree with a federal court holding that "where the particular facts of a case cast significant doubt upon the accuracy of a translated [statement], the translator or a witness who heard and understood the untranslated [statement] must be available for testimony and cross-examination at the . . . hearing before the [statement] can be admitted." (*U.S. v. Martinez-Gaytan, supra,* 213 F.3d 890, 891.) These concerns apply equally at a preliminary hearing, where a magistrate must consider whether a qualified police officer who seeks to testify regarding a translated statement made by an out-of-court declarant has "sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (*Whitman v. Superior Court, supra,* 54 Cal.3d at pp. 1072-1073.)

Although respondent brought to the attention of the Court of Appeal the cases discussed and cited above for the proposition that a translator simply may serve as a language conduit, that court saw no need to evaluate their holdings: "The federal and sister state court opinions . . . addressed a question distinctly different from the one before us. They were confronted only with the issue of whether a trial court should admit translated extrajudicial statements which fall *under a recognized hearsay exception,* i.e., the interpreted statements qualified as declarations against interest (Evid. Code, § 1230) or admissions (Evid. Code, § 1220), creating a circumstantial guarantee of trustworthiness. [Citations.] We must grapple with Proposition 115, which unlike any other recognized hearsay exception, 'imposes no requirement that the underlying hearsay evidence itself be reliable or trustworthy.' [Citation.] This is a distinction that makes a difference."

We are not persuaded by the distinction drawn by the Court of Appeal. First, we have determined that a translated statement may be attributed to the declarant under the standards described above, so that the translation simply does not interpose a layer of hearsay. Further, in the present case, of course, *it is by virtue of Proposition 115,* rather than a traditional hearsay exception, that the testimony of the police officers regarding the extrajudicial statements of the declarants was made admissible at the preliminary hearing— apart from whether or not the statements had been translated. Although the hearsay rendered admissible by Proposition 115 does not fall under a traditional hearsay exception whose pedigree alone may provide assurances of reliability, the hearsay exception created by the initiative measure ensures adequate reliability for the limited purpose of the preliminary hearing, as we

have concluded. (See *People v. Miranda* (2000) 23 Cal.4th 340, 348-349 [96 Cal.Rptr.2d 758, 1 P.3d 73]; *Whitman, supra,* 54 Cal.3d at p. 1074.) Under Proposition 115, such evidence is admissible provided the officer "had sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to provide meaningful assistance to the magistrate in assessing the reliability of the statement." (*People v. Miranda, supra,* 23 Cal.4th at p. 348, italics omitted.) Because of the limited function of the preliminary hearing and the ability of the magistrate to evaluate the evidence critically, we have determined that even when the out-of-court statement is one made by an accomplice, the statement may be related at a preliminary hearing by a qualified officer. (*Id.,* at p. 351.) We do not believe that a translated out-of-court statement related by a qualified officer in the context of a preliminary hearing need be subject to any greater requirements with respect to reliability.

Defendant contends we are bound by early decisions of this court to determine that an out-of-court translation necessarily constitutes a layer of hearsay that renders the underlying statement inadmissible. (See, e.g., *People v. Luis* (1910) 158 Cal. 185 [110 P. 580]; *People v. John* (1902) 137 Cal. 220 [69 P. 1063]; *People v. Ah Yute* (1880) 56 Cal. 119; *People v. Lee Fat* (1880) 54 Cal. 527.) Most of the early cases seem to have taken the position that the only witness who is *competent* to testify regarding a prior translated statement, whether the statement was made in court or not, is a witness who understood the language in which the prior statement was made. In *People v. Ah Yute, supra,* 56 Cal. 119, for example, at trial the prosecution impeached the defendant with inconsistent statements made at an earlier trial. At that earlier trial, the defendant had testified through an interpreter. In the second trial, the prosecution proved the defendant's prior inconsistent statements by calling the court reporter who had reported the earlier trial. The reporter did not understand the defendant's language, and on appeal we held that the court should have sustained the defendant's objection that the reporter was not competent to testify because he did not testify from his own knowledge and recollection. We held that the interpreter or a witness who had *understood* the defendant's prior testimony should have been called to recount the defendant's earlier testimony. In other cases, too, we determined that only the interpreter, and not the court reporter, is competent to recount the declarant's earlier testimony, and in some instances we characterized the proffered testimony as hearsay. (See *People v. Luis, supra,* 158 Cal. 185 [only a person who understood the statement could testify regarding what the defendant stated at a nonjudicial proceeding attended by shorthand reporter and interpreter; the reporter could not testify as to his notes of what the interpreter had said in English]; *People v. John, supra,* 137 Cal. at p. 221 [official stenographer who served at preliminary hearing could not testify at

later proceeding regarding what the defendant stated at preliminary hearing through an interpreter, because stenographer's testimony constituted hearsay]; *People v. Lee Fat, supra,* 54 Cal. at p. 529 [same]; see also *People v. Ong Git* (1913) 23 Cal.App. 148, 155 [the transcript of prior statements interpreted at a coroner's inquest was inadmissible; hearsay rule could be avoided only by calling the interpreter or witness who had understood the language in which the statements had been made].)

Apparently recognizing the dire practical and legal consequences of a holding that testimony given through an interpreter never can be recounted at a later proceeding except by a person who heard and understood the earlier statement, defendant claims that the early case law supports a distinction between in-court and out-of-court translations. He suggests that only the latter should continue to constitute hearsay. Contrary to defendant's contention, our decisions in *People v. Oiler* (1884) 66 Cal. 101 [4 P. 1066] and *People v. Lewandowski* (1904) 143 Cal. 574 [77 P. 467] did not "beg[i]n drawing a distinction between those statements interpreted while under oath during a court proceeding, and those statements interpreted outside of court." We note also that the *Ah Yute* line of cases subsequently was reaffirmed in *People v. Luis, supra,* 158 Cal. 185. Nor has the distinction between in-court and out-of-court translations been adopted by the Courts of Appeal; the most recent appellate decision on this point holds that an officer may testify regarding the content of an extrajudicial confession even when the confession was made in a language unknown to the officer and the officer understood the confession only as translated. (*People v. Torres, supra,* 213 Cal.App.3d 1248.)

The Court of Appeal in *People v. Torres, supra,* 213 Cal.App.3d 1248, examined some of the early California cases cited above that suggest or hold that translation necessarily adds a layer of hearsay. The appellate court pointed out that none of those decisions involved much analysis and none discussed the language-conduit or agency theory of admissibility of translated statements. (*Id.* at p. 1260.) The court in *Torres* observed: "Moreover, the holdings are unrealistic and unworkable. . . . Trial courts must employ numerous court interpreters, whose services in many languages and dialects are essential to the proper administration of our judicial system. On any given day, a court interpreter may be summoned to translate in a number of courtrooms and cases . . . . The role of the interpreter simply is to accurately convey the substance of the communication between interested parties and the court. The interpreter is not asked and should not be expected to memorialize and remember the content of every communication. That is the role of the official court reporter. It would be impractical and virtually impossible to impose such a duty on court interpreters. In fact, to expect and

require interpreters to be able to recall every communication they interpret would place upon them an immense burden which could adversely affect their ability to quickly, accurately, and intelligibly communicate the statements they translate." (*Ibid.*)

We agree with these observations. We also note that unlike the legal setting in which our early cases were decided, contemporary constitutional and statutory provisions reflect support for the widespread use of interpreters in judicial proceedings (see Cal. Const., art. I, § 14; Gov. Code, §§ 68560-68565), a system that would be extremely difficult to sustain if a court reporter's record of interpreted testimony were to be considered inadmissible in subsequent proceedings and the interpreter were required to testify regarding the accuracy of earlier interpretations. To the extent our early decisions questioned the competence of persons who heard only a translated statement to testify regarding that statement, that concern should be met by the judicial officer's case-by-case determination whether the translated statement fairly may be attributed to the declarant in light of the factors related above. A contrary rule would seriously and needlessly limit the scope of the relevant and reliable evidence that would be admissible in judicial proceedings in our state, where many residents speak languages other than English.[3] Although defendant resists the admission of the translated statements in the present case, we observe that a rule excluding such evidence often would operate to the detriment of defendants in criminal proceedings. (Of course, with respect to in-court interpretation by certified interpreters, concerns regarding the competence of the interpreter normally will be met by statutory certification requirements.) (See Gov. Code, §§ 68561, 11435.20 [use of interpreters in administrative proceedings]; Evid. Code, §§ 664, 752; Cal. Rules of Court, rules 984, 984.2.)

Finally, defendant asserts that in analyzing her claim that translation should be considered a level of hearsay, we should be guided by the Washington Court of Appeals, which held in *State v. Lopez* (1981) 29 Wash.App. 836 [631 P.2d 420] that a crime victim's extrajudicial translated statement should have been excluded as hearsay. Although in that case the victim's own statement was admissible as an excited utterance, it was uttered in a foreign language and translated. "The general rule," the appellate court announced, "is that a witness is incompetent to testify to extrajudicial statements made by another person when it is necessary to have the statement translated before it can be understood by the witness. Such testimony is

---

[3]In California, 224 languages are spoken (excluding dialects), and more than 4 percent of the state's residents speak *no* English. (Judicial Council of Cal., Admin. Off. of Cts., Rep. to Legis. on the Use of Interpreters in the California Courts (2001) p. 16.) A recent sample of superior courts in nine counties indicates that in one fiscal year, the courts provided court interpreters for 64 or more languages "literally from A to Z (Albanian to Zapoteco)." (*Id.*, at p. 14.) It is estimated that more than 100 languages are interpreted in the courts of California.

clearly hearsay because the witness testifies to what the interpreter asserts the other party said." (*Id.* at p. 422.) Later appellate court decisions in Washington, however, recognize that such evidence may be admissible if "the interpreter is an agent or authorized to speak for the declarant." (*State v. Huynh* (1987) 49 Wash.App. 192, 203 [742 P.2d 160, 167-168].) Indeed, a recent decision suggests that the language-conduit approach, outlined in the cases we have noted above, "is . . . generally consistent with the approach under Washington law . . . ." (*State v. Garcia-Trujillo* (1997) 89 Wash.App. 203, 208 [948 P.2d 390, 392] [determining that in the particular case, the translator was not an agent and was not authorized to speak for the declarant].)

In sum, we agree with the general view, expressed in the majority of recent cases we have discussed above, that if a contemporaneously translated statement fairly may be attributed to the declarant under the particular circumstances of the case, applying the factors we have outlined, the translation does not add a layer of hearsay. To the extent prior California decisions have reached a contrary conclusion, they are overruled or disapproved.[4] Accordingly, we reject defendant's claim that a translation necessarily introduces a layer of hearsay.[5]

## IV

We consider next whether, notwithstanding our conclusion that there has been compliance ·with applicable statutory provisions, constitutional principles should lead us to conclude that a qualified officer may not testify at a preliminary hearing regarding the translated statement of a declarant. In explaining its conclusion, the Court of Appeal relied upon such principles. It stated: "Utilizing his or her experience and expertise, the officer can assess and accurately describe the general circumstances surrounding the crime based on personal observations but is unable to personally assess or accurately describe the spoken word due to the language barrier. The officer's testimony is a classic example of double hearsay. And, as a result, the

---

[4]The following cases are overruled or disapproved to the extent they are inconsistent with the present opinion: *People v. Luis, supra,* 158 Cal. 185; *People v. John, supra,* 137 Cal. 220; *People v. Ah Yute, supra,* 56 Cal. 119; *People v. Lee Fat, supra,* 54 Cal. 527; *People v. Ong Git, supra,* 23 Cal.App. 148.

[5]Our holding is applicable to defendant's case and applies fully retroactively, as is the norm for judicial decisions. Our holding does not expand criminal liability or enhance punishment, and we do not perceive any reliance that would be defeated by application of this decision to defendant. (See *People v. Birks* (1998) 19 Cal.4th 108, 136-137 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) Our departure from early California decisions is not "new and unforeseen" (see *id.* at p. 137), but rather is consistent with actual practice in our trial courts, and our adoption of the analysis embraced in the recent decisions of federal and state courts that we have discussed was foreshadowed in *People v. Torres, supra,* 213 Cal.App.3d 1248.

defendant is deprived of the opportunity to meaningfully cross-examine the individuals who heard the statements of the witnesses firsthand at the scene."

The Court of Appeal also referred to the constitutional guarantee of due process of law, stating: "Basic concepts of due process require the courts to make decisions based on credible evidence. It is one thing to say the translation of an inherently *reliable* statement may be admissible under certain circumstances. We are not willing to extend that theory to translated unreliable statements under the auspices of Proposition 115. [¶] . . . [I]t would not pass constitutional muster if expanded to include multiple hearsay where the defendant is deprived of the opportunity to meaningfully cross-examine the testifying officer regarding the accuracy of the translated out-of-court statements."

We have concluded, of course, that a contemporaneous translation does not add a layer of hearsay when the translated statement fairly is attributable to the declarant, and thus the Court of Appeal's concern with multiple hearsay is not well founded. That court, and defendant as well, also fail to adequately take into account the procedural posture of this case. As we have pointed out, the preliminary hearing has a limited function under current California law, and accordingly the defendant at such a proceeding does not have the same interest in confrontation as he or she has at trial. We explained this distinction in our earlier cases. Responding to a claim that the admission of hearsay evidence at the preliminary hearing constituted a violation of the confrontation clause of the California Constitution, we explained that Proposition 115 constituted an amendment to the California Constitution: "[T]he measure permitted the admission of hearsay at preliminary examinations and thus amounted to a state constitutional exception to the right to confrontation enunciated in the state Constitution." (*People v. Miranda, supra,* 23 Cal.4th at p. 348.)

With respect to the federal Constitution's confrontation clause and federal case law, we have stated that in view of the limited function of the preliminary hearing, "Proposition 115 amply guaranteed reliability because '. . . the experience and training requirements of [Penal Code section 872] help assure that the hearsay testimony of the investigating officer will indeed be as reliable as appropriate in light of the limited purpose of the preliminary hearing . . . . [Citation.] Although the underlying reliability of the . . . witness may remain untested until trial, we think the evaluation and cross-examination of the testimony of the qualified investigating officer provides sufficient basis for a pretrial probable cause determination.' " (*People v. Miranda, supra,* 23 Cal.4th at p. 349, italics omitted.) As we further have explained, the right of confrontation is " ' "basically a trial right," ' " and it is

" 'doubtful that the federal confrontation clause operates to bar hearsay evidence offered at a preliminary hearing held to determine whether probable cause exists to hold the defendant for trial.' [Citation.] . . . [We] concluded that 'the new, limited form of preliminary hearing in this state sufficiently resembles the Fourth Amendment probable cause hearing examined in *Gerstein* [*v. Pugh* (1975) 420 U.S. 103 [95 S.Ct. 854, 43 L.Ed.2d 54]], . . . to meet federal confrontation clause standards despite reliance on hearsay evidence.' " (*People v. Miranda, supra,* 23 Cal.4th at p. 349, italics omitted.)

"Finally, [we] rejected the argument that admission of single-level hearsay at the preliminary examination constituted a violation of due process. [Citation.] We observed that Proposition 115 provides the defendant with a reasonable opportunity to cross-examine and evaluate the testimony of a qualified law enforcement officer relating single-level hearsay, and to call specified defense witnesses to rebut or qualify that testimony. We concluded these opportunities amply satisfied the demands of due process." (*People v. Miranda, supra,* 23 Cal.4th at p. 349.)

In view of the limited function of the probable cause determination and the resulting circumscribed interests of defendants at preliminary hearings, and their ability to cross-examine the investigating officers and to call witnesses, we believe that the Court of Appeal erred in determining that defendant's right of cross-examination was infringed, or that the translated evidence was so unreliable that its admission constituted a denial of due process of law.

Defendant raises additional due process and confrontation clause objections to the admission of this evidence, claiming that the translators in the present case actually were in fact unreliable. She claims that Hector admitted that he did not provide a word-for-word translation, and that he was not certified and had no experience as a translator. She further claims that Higinia stated that she was not fluent in English and no longer recalled precisely the questions and answers she had translated. She also claims that the officers' expertise did not extend to assessing the reliability of Spanish-language translations.

Contrary to defendant's claims, we are not persuaded that a qualified officer's experience and expertise will not extend to assisting the magistrate in determining the reliability of translated statements. As noted, an experienced officer may provide meaningful assistance by testifying, as did the officers in the present case, regarding the context in which the original declaration was made. The officer may explain the circumstances under

which the translator was pressed into service, the apparent language skills of the translator, and the potential for bias on the part of the translator. The officer also may testify regarding such circumstances of the crime or incident under investigation as may corroborate the translation and aid the magistrate in determining not only whether the translation is reliable, but also whether the underlying statement of the declarant is reliable. In the present case, the officers described the circumstances under which the translations were made and the apparent neutrality of the translators. They also pointed to evidence produced during the investigation that corroborated the translated statements. Additionally, the translators themselves testified, and it is evident from the record that both of them were fluent in English and Spanish and had no bias or motive to distort the translations. It was not necessary that they have a present recollection of all the questions asked during the interview or the precise answers given. We reject defendant's claim that the translated statements were so unreliable that their admission into evidence at a preliminary hearing constituted a violation of the due process and confrontation clauses.

Defendant also claims that whatever evidence was admitted at the preliminary hearing necessarily will be admissible at trial, suggesting that we must consider whether the admission of the translated statements *at trial* would constitute a due process or confrontation clause violation. Her premise is incorrect. Prior testimony is admissible only under certain circumstances. (See Evid. Code, § 1290 et seq.; see also Evid. Code, § 1235 [prior inconsistent statements].) The testimony of a police officer recounting the statements of out-of-court declarants generally would not be admissible at trial; Proposition 115 makes those statements admissible at the preliminary hearing but does not supply a hearsay exception for such statements proffered at trial. In any event, the present case does not pose for our decision the constitutionality of any evidentiary rulings at trial.

V

■ In the present case, the evidence amply supports the conclusion that the translations were sufficiently unbiased and accurate to permit the statements fairly to be attributed to the declarants. Under these circumstances, the translations do not interpose a layer of hearsay. Examining the record in light of the factors set forth in *Nazemian*, we observe that the translators were not "supplied" by the police, but (apparently being unknown both to the declarants and police officers, as well as to the defendant) just happened to be on the scene. Their neutrality is evident from the record, and there is no contrary suggestion of a motive to mislead or distort. The investigating officers observed the process of translation and did not report

any apparent hesitation or difficulty in communicating, or any bias. In addition, evidence produced during the investigation tended to corroborate the substance of the translated statements. Moreover, the translators appeared and testified at the preliminary hearing with respect to the course of the translations, their neutrality, and their language skills, and ample evidence supports the conclusion that they were skilled in English and Spanish and were capable of providing accurate translations.

As a reviewing court, we must draw all legitimate inferences in favor of the implicit determination of the magistrate that the two translators were sufficiently skilled and unbiased so that the translated statements fairly could be attributed to the declarants. (See *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278]; *Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 842 [100 Cal.Rptr.2d 120]; *People v. Daily* (1996) 49 Cal.App.4th 543, 549-551 [56 Cal.Rptr.2d 787].) We conclude that the magistrate acted within his discretion in admitting the translated statements into evidence. It was for the magistrate, of course, to determine the weight to be given to the testimony relating the out-of-court statements. (See *People v. Miranda, supra,* 23 Cal.4th at p. 351.)

## VI

For the foregoing reasons, the judgment of the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.

**MORENO, J.,** Concurring.—I agree with the majority's holding that a sufficiently reliable translated statement is not hearsay. I write separately to emphasize that our opinion does not alter a defendant's confrontation clause rights at a preliminary hearing. In *People v. Miranda* (2000) 23 Cal.4th 340, 354 [96 Cal.Rptr.2d 758, 1 P.3d 73], we held that the admission of single-level hearsay at a preliminary hearing does not violate a defendant's confrontation clause rights. Our opinion today goes no further.

Under the language-conduit theory, once the accuracy and reliability of a translation is established, we consider the translated statement to be that of the original speaker. Consequently, we find that such a translation does not interpose a layer of hearsay. The confrontation clause concerns raised in the present case, then, relate to the introduction of single-level hearsay between the original declarant and the testifying officer. As we noted in *Miranda,* Proposition 115 "provides the defendant with opportunities at the preliminary examination to cross-examine and evaluate the testimony of a qualified

law enforcement officer relating single-level hearsay, and to call specified defense witnesses to rebut the prosecution's case." (*People v. Miranda, supra*, 23 Cal.4th at p. 354.) Under those circumstances we found that the defendant's confrontation clause rights were not violated. We do not decide in this case whether introduction of a second level of hearsay at a preliminary hearing would violate a defendant's confrontation clause rights.