Filed 7/22/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B257429 |
| Plaintiff and Appellant, | (Super. Ct. No. 1449328) |
| | (Santa Barbara County) |
| v. | |
| ANTHONY MURILLO, | |
| Defendant and Respondent. | |

Penal Code Section 140, subdivision (a) makes it a crime to threaten a crime victim with violence.[1]  Here alleged threats were made in the lyrics of a so-called "rap song" distributed on the Internet.  The magistrate dismissed a felony complaint against Anthony Murillo alleging two counts of threatening a crime victim.  (§ 140, subd. (a).)  The trial court issued an order denying the People's motion to reinstate the complaint.  It decided as a matter of law that the lyrics were protected speech and did not constitute a criminal threat within section 140.

The People appeal.  We reverse.  Here, and in most cases, the trier of fact determines what constitutes a threat.  (*People v. Lowery* (2011) 52 Cal.4th 419.)  We direct the superior court to enter a new order granting the motion and returning the case to the magistrate for resumption of proceedings.

An obvious question in this case is whether an alleged threat directed at specific persons is any less a threat when it is sung or spoken in a recording and played for an audience.  Does it matter whether the alleged threat is on a work in a museum of

_____

[1] All statutory references are to the Penal Code.

modern art?  Philosopher and media expert Marshall McLuhan posited that the "medium is the message."  That may be so, but here the trier of fact determines the nature of the message whatever the medium.

*FACTUAL AND PROCEDURAL HISTORY*

In April 2012, Jane Doe 1 and Jane Doe 2 reported to law enforcement that Shane Villalpando had raped them.  Murillo, Villalpando, and the two rape victims were students at a private high school in Santa Maria.  Following their complaints to authorities, Jane Doe 1 and Jane Doe 2 suffered harassment and bullying.  The girls experienced depression and became suicidal; eventually, they changed schools and moved away.

In June 2013, Villalpando was convicted of three counts of unlawful sex with a minor concerning Jane Doe 1.  (§ 261.5.)  He also pleaded guilty to one count of unlawful sex with a minor concerning Jane Doe 2.  (*Ibid.*)  The trial court granted Villalpando five years of formal probation, with terms and conditions, including one year of confinement in county jail.

Murillo and Villalpando were close friends.  Murillo maintained two Facebook accounts – one account was personal and the other concerned his rap music aspirations and career as "Lil A."[2]  On September 13, 2013, Murillo posted four messages on his personal Facebook account regarding a new song he created, entitled "Moment for Life Remix," that he would release on the "Reverbnation" website that day.  In two posts, Murillo included a link to the new song.

Murillo's posts also stated that the song was dedicated to his "homie Shane."  Murillo stated that he missed Villalpando, who was then incarcerated for the sex

---

[2] "Rap music" has been defined as a style of black American popular music consisting of improvised rhymes performed to a rhythmic accompaniment.  (*Bell v. Itawamba County School Bd.* (5th Cir. 2014) 774 F.3d 280, 283, fn. 2.)  "Gangsta rap" has been defined as a style of rap music featuring aggressive, often misogynistic lyrics, typically centering on gang violence.  (*Estate of Tucker v. Interscope Records, Inc.* (9th Cir. 2008) 515 F.3d 1019, 1025.)

2

crime convictions. Murillo also stated, "fuck snitches," and "fuck [t]he system," in his Facebook posts.

Murillo later uploaded "Moment for Life Remix" to the Reverbnation website. The song's lyrics lamented Villalpando's incarceration, referred to Jane Doe 1 and Jane Doe 2 by their first and last names, and described the girls as "hoe[s]," among other profanities. The lyrics also stated: "[T]hese bitches caught him slippin [¶] Then they fuckin snitchin [¶] . . . I'm fucking all these bitches [¶] Hunting down all these snitches [¶] . . . Shit you know we have no fear [¶] I'll have your head just like a dear [¶] It will be hanging on my wall [¶] . . . I said go and get the Feds [¶] Cuz your gonna to end up dead [¶] You're going be laying on that bed [¶] Cuz im coming for your head bitch."

Murillo also posted references to "Moment for Life Remix" on his music-related Facebook account and his Twitter account. One post stated, "fuck Snitches."

Murillo's Facebook, Reverbnation, and Twitter accounts were freely accessible to anyone. Murillo's Reverbnation page contains a photograph of him holding a shotgun.

On September 20, 2013, Murillo posted a Twitter message regarding pressure that he had received from the high-school dean to remove the song because it contained threats. Murillo referred to the dean as "dumb ass," and stated "805 hoes on blast lol."

On September 20, 2013, Jane Doe 2 saw a link to Murillo's new song on her Facebook newsfeed. She opened the link and listened to the song several times before she understood it. She was shocked and frightened by the song's lyrics and also by the comments posted by others. Jane Doe 2 informed her mother, who then contacted law enforcement.

Murillo was subsequently arrested and charged with two counts of threatening to use force or violence against a crime victim. (§ 140, subd. (a).) After his arrest, Murillo informed a police officer that he did not intend to harm the rape victims by creating, singing, or posting the song.

3

"Moment for Life Remix" was downloaded 1,089 times and played 23,468 times before it was removed from the Reverbnation website on October 9, 2013. In all, the song remained on the website for 26 days.

*Magistrate's Ruling at the Preliminary Examination*

Following receipt of evidence at the preliminary examination, the parties argued whether the lyrics of "Moment for Life Remix" constituted threats within the meaning of section 140, subdivision (a). The prosecutor played a recording of the song and provided a transcript of its lyrics for the court. The magistrate decided that although the lyrics were harassing and dismissive of the rape victims, the lyrics did not establish the element of a willful threat to use force against the victims. The magistrate noted, however, that publishing the victims' names "speaks to the purpose behind [Murillo's] intent." The magistrate discharged the felony complaint and declined to hold Murillo to answer for the charges.

*Motion to Reinstate*

The People then filed a motion to reinstate the felony complaint, pursuant to section 871.5. Following review of the preliminary examination transcript and argument by the parties, the trial court denied the motion. The judge stated, "[T]he court feels that the rap song is closer to protected speech than non-protected speech." In ruling, the court relied upon the standard announced in *People v. Lowery*, *supra*, 52 Cal.4th 419, 427, a decision considering the constitutionality of section 140, subdivision (a).

The People appeal and contend that the trial court erred by refusing to reinstate the felony complaint. (§§ 871.5, subd. (f) [prosecutor may appeal denial of motion to reinstate complaint], 1238, subd. (a)(9) [same]; *People v. Shrier* (2010) 190 Cal.App.4th 400, 409 [section 871.5 is the exclusive method by which the People may obtain review of the magistrate's order of dismissal].)

*DISCUSSION*

The People assert that Murillo's song lyrics were a serious expression of his intent to commit acts of violence against the two rape victims. (*Jones v. State* (2002) 64 S.W.3d 728 [defendant wrote and handed a classmate an angry rap song in which he

4

unconditionally threatened to kill her for rejecting him after he returned from juvenile detention].)  The People point out that section 140 requires a general intent and not a specific intent to intimidate the victim.  Nor does section 140 require that the threat be communicated to the victim.  (*People v. McLaughlin* (1996) 46 Cal.App.4th 836, 842 ["section 140 prohibits the threats it describes, whether or not the threats are communicated to the potential victim"]; *People v. McDaniel* (1994) 22 Cal.App.4th 278, 284 [the acts proscribed in section 140 occur because the witness or victim or informant has provided information or assistance to a law enforcement officer].)  The People add that Murillo willfully created and promoted his rap song on a public music website; his song expressed anger toward "snitches"; and he named the rape victims by their first and last names.

*I.*

A preliminary examination serves a limited function; it permits the determination whether probable cause exists to believe that the defendant has committed a felony and should be held for trial.  (*Correa v. Superior Court* (2002) 27 Cal.4th 444, 452.)  A defendant will be bound over to superior court and held to answer if "it appears from the examination that a public offense has been committed and there is sufficient cause to believe that the defendant is guilty."  (§ 872, subd. (a).)  Conversely, the magistrate must order the complaint dismissed when "it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense."  (§ 871.)  "Sufficient cause" is generally equivalent to reasonable and probable cause, i.e., a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.  (*People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1459-1460.)

When a magistrate dismisses an action, the prosecutor may seek review in the superior court and request reinstatement of the charges, pursuant to section 871.5.  (*People v. Shrier*, *supra*, 190 Cal.App.4th 400, 409.)  The prosecutor may seek reinstatement, however, only on the basis that the magistrate erred as a matter of law in dismissing the action or a portion thereof.  (*Ibid.*)  The reinstatement motion is not an

5

opportunity to relitigate the issues before the magistrate; rather, it is a means for the superior court to determine the legal propriety of the magistrate's dismissal. (*Ibid.*)

On appeal, the reviewing court disregards the superior court's ruling and directly examines the magistrate's ruling to determine if the dismissal was erroneous as a matter of law. (*People v. Shrier*, *supra*, 190 Cal.App.4th 400, 409-410.) To the extent that the magistrate's decision rests upon factual findings, we draw all reasonable inferences in favor of the magistrate's ruling and do not substitute our views regarding the credibility of witnesses or the weight of the evidence. (*Id.* at p. 410.) We review the magistrate's legal conclusions do novo, but are bound by the magistrate's factual findings that are supported by sufficient evidence. (*Ibid.*)

II.

Section 140, subdivision (a) provides in relevant part: "[E]very person who willfully uses force or threatens to use force or violence upon . . . a victim of[] a crime . . . because the . . . victim . . . has provided any assistance or information to a law enforcement officer, or to a public prosecutor in a criminal proceeding . . . , shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years." "Willfully," when applied to the intent with which an act is done or omitted, "implies simply a purpose or willingness to commit the act, or make the omission referred to." (§ 7, subd. 1.) "Willful" does not require an intent to violate the law, to injure another, or to acquire any advantage. (*Ibid.*)

In *People v. Lowery*, *supra*, 52 Cal.4th 419, 427, our Supreme Court construed section 140 as applicable only to "those threatening statements that a reasonable listener would understand, in light of the context and surrounding circumstances, to constitute a true threat, namely, 'a serious expression of an intent to commit an act of unlawful violence' [citation], rather than an expression of jest or frustration." *Lowery* also concluded that section 140, subdivision (a) does not require that a threat to harm a crime witness or victim be immediate or that the defendant has the apparent ability to carry out the threat. (*Id.* at p. 428.)

6

*III.*

In our review of the undisputed factual circumstances presented at the preliminary examination, a reasonable listener could have understood "Moment for Life Remix" to constitute a true threat to Jane Does 1 and 2; that is, the song could be understood to convey a serious expression of intent to commit an act of unlawful violence against the girls. (*People v. Chandler* (2014) 60 Cal.4th 508, 519; *People v. Lowery*, *supra*, 52 Cal.4th 419, 427.) The lyrics included the phrases, "you're gonna end up dead," and "I'm coming for your head, bitch." Murillo also revealed the names of the rape victims and repeatedly used the phrase "fuck snitches." Murillo's Reverbnation page contained a photograph of him holding a shotgun. Jane Doe 2 was frightened and upset when she listened to and understood the song's lyrics. Her mother was sufficiently concerned to contact law enforcement. For purposes of the preliminary examination, this evidence provides sufficient cause to believe Murillo is guilty of the charged offenses. As a matter of law, the magistrate's legal conclusion otherwise is in error.

This is not a matter where we must defer to any findings regarding the weight of the evidence or the credibility of witnesses. The magistrate made no findings before ruling that the evidence did not establish that Murillo willfully threatened to use force against Jane Doe 1 or Jane Doe 2. Our review of the evidence concludes otherwise.

Following oral argument in this matter, we requested the parties to brief the effect of the recent decision in *Elonis v. United States* (2015) 135 S.Ct. 2001. The parties agree that *Elonis* concerns the mens rea required for conviction of 18 U.S.C. section 875(c), a federal statute prohibiting a communication that contains a threat to injure another.[3] Our decision here is governed, however, by our Supreme Court's interpretation of section 140, subdivision (a). (*People v. Lowery*, *supra*, 52 Cal.4th 419, 427.) Therefore, we do not discuss *Elonis*.

---

[3] The federal statute is similar to our section 422, punishing threats to commit a crime resulting in death or great bodily injury. Section 422 expressly requires that a defendant specifically intend his statement to be taken as a threat.

We reverse the order denying the People's motion to compel the magistrate to reinstate the complaint.  We direct the superior court to enter a new order granting the motion and returning the case to the magistrate for resumption of the proceedings.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

Rick Brown, Judge

Superior Court County of Santa Barbara

_____


Joyce E. Dudley, District Attorney, Jennifer Karapetian, Marguerite Clipper Charles, Deputy District Attorneys, for Plaintiff and Appellant.


David Andreasen for Defendant and Respondent.