Filed 6/28/24  P. v. Manrique CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B331471 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA040557) |
| v. | |
| JORGE LUIS MANRIQUE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Reversed with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Jorge Luis Manrique appeals from a postconviction order denying his petition for resentencing under Penal Code former section 1170.95 (now section 1172.6)[1] with respect to his murder conviction. In 2020 Manrique pleaded no contest to the first degree murder of Byron Benito pursuant to a negotiated plea. As part of the plea colloquy, Manrique admitted that he was at a house where a plan was formulated to attack Benito, and Manrique and other gang members participated in the attack that led to Benito's death. After appointing counsel and ordering briefing, the superior court determined at the prima facie review stage that Manrique was not entitled to relief because of his admissions as part of the plea colloquy.

Manrique contends on appeal that notwithstanding his admission that he was present during the formation of the plan to attack Benito and participated in the attack, he was eligible for relief because the prosecution could have proceeded under the natural and probable consequences doctrine. Further, although Manrique pleaded guilty to committing murder with malice aforethought, his plea was to the generic charge of murder, and did not constitute an admission that he had the intent to kill. We agree and reverse the order denying Manrique's petition and remand with directions for the court to issue an order to show cause and conduct further proceedings in accordance with section 1172.6, subdivision (d).

---

[1]     Further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Shooting, the Information, and the Negotiated Plea*

This case arises out of the killing of Byron Benito in retaliation for the murder of Victor Flores, a member of the Young Brown Familia gang.[2]  Following the murder of Flores, Manrique and 16 other members of the Young Brown Familia gang met at an apartment where they discussed luring Benito to a remote location where the group would kill him in retaliation for Flores's murder.  The group waited in a parking lot for an accomplice to bring Benito to the location. Once Benito arrived, the group attacked him.  Manrique later admitted to Los Angeles County Sheriff's Detective Gilbert Anderson that he was at the scene and swung at the victim one time, but "his arm went out." Manrique later discovered that he had been stabbed in the back four times.  Benito sustained 33 stab wounds and died when one stab punctured his lung.

Manrique and 16 codefendants were charged in an amended information for the murder of Benito "with malice aforethought" (§ 187, subd. (a)(1); count 1) and conspiracy to commit murder (§ 182, subd. (a)(1); count 2).  The information alleged the murder was committed by means of lying in wait (§ 190.2, subd. (a)(15)) and both offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

In 2003, pursuant to a negotiated plea agreement, Manrique pleaded guilty to first degree murder, and the trial court dismissed count 2 for conspiracy to commit murder, the

---

[2]   We provide a brief summary of the facts elicited at the preliminary hearing for background purposes only.

3

lying-in-wait special circumstance allegation, and the gang allegation. As part of the negotiated plea, the court sentenced Manrique to 25 years to life in state prison.

During the plea colloquy, the prosecutor inquired of Manrique: "Are you also entering your plea freely and voluntarily because you, in truth and in fact, were at a house where a plan was formulated to attack the victim in this case, you drove to the attack location, and you, in fact, participated in an attack with other Young Brown Familia gang members and associates, that attack ultimately leading to the death of the victim Byron Benito?" Manrique answered, "Yes, sir."

Manrique waived his constitutional rights, and the prosecutor inquired, "Mr. Manrique, with those rights and consequences in mind, how do you now plead that on and between January 15, 2002, and January 16, 2002, in the county of Los Angeles, you committed the felony crime of murder, that being murder in the first degree, and that with malice aforethought, you murdered Byron Benito as named in count 1 of this information?" Manrique responded, "Guilty, sir." The prosecutor asked defense counsel whether he "join[s] in the waivers, concur[s] in the plea, and stipulate[s] to a factual basis based on the discovery provided and the preliminary hearing transcript." Defendant counsel stated, "Yes."

B.    *Manrique's Petition for Resentencing*

On June 22, 2022 Manrique, representing himself, filed a form petition for resentencing under former section 1170.95 on the basis that he could not presently be convicted of murder or attempted murder under the changes made to sections 188 and 189, effective January 1, 2019. The superior court appointed

4

counsel for Manrique, the People filed a response and supplemental response, and Manrique's attorney filed a reply.

At the May 31, 2023 hearing on Manrique's petition, Manrique argued that although he admitted he had participated in the plan to attack Benito, he never admitted he had the intent to kill. Therefore, the prosecution could have tried him under the natural and probable consequences doctrine, specifically, that he participated in an assault, the consequence of which was the death of Benito. Further, citing *People v. Rivera* (2021) 62 Cal.App.5th 217, 224 (*Rivera*), Manrique argued the fact the plea used the generic words "malice aforethought" as part of the description of the murder charge did not "foreclose the possibility that he may have been tried under [the natural and probable consequences] theory." The prosecutor responded that *Rivera* was distinguishable because in that case the petitioner was the driver, but Manrique admitted the facts showing that he was a "direct participant" and had the intent to kill.

The superior court agreed with the prosecutor and denied the petition, finding on the "four corners of the plea and the words uttered and responded to by the petitioner and the questions propounded by the prosecution," Manrique was ineligible for resentencing as a matter of law.

Manrique timely appealed.

## DISCUSSION

A.  *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope

5

of the felony-murder rule.  (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848 (*Gentile*); see *People v. Reyes* (2023) 14 Cal.5th 981, 984.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e).  (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.) Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)).  (See *Strong*, at p. 708.)  Senate Bill No. 775, effective January 1, 2022, expanded the scope of potential relief by applying Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter.  (See § 1172.6, subd. (a).)

Senate Bill 1437 also provided a procedure, now codified in section 1172.6, for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill 1437's changes

6

to sections 188 and 189. (*Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1172.6, subdivision (b)(3). Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing of entitlement to relief. (See § 1172.6, subd. (c).) Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).)

B.      *The Superior Court Erred in Denying Manrique's Petition Without Issuing an Order To Show Cause*

Manrique contends the superior court erred in finding he was ineligible for relief at the prima facie review stage because he could have been convicted of murder at the time of his plea under the natural and probable consequences doctrine. The People respond that under the negotiated plea, Manrique admitted to facts showing he participated in the plan to attack (and kill) Benito, and further, he admitted to committing the murder with

7

"malice aforethought," making him ineligible for relief. Manrique has the better argument.

As discussed, where a defendant makes a prima facie showing of eligibility for relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1).) Manrique averred in his petition for resentencing that he pleaded no contest to murder in lieu of going to trial; the People could have proceeded at trial under the natural and probable consequences doctrine; and he could not now be convicted of murder or attempted murder under the 2019 amendments to sections 188 and 189. These statements under penalty of perjury establish a prima facie case of eligibility for relief under section 1172.6, unless the "'the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," in which case "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis, supra*, 11 Cal.5th at p. 971.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra*, 11 Cal.5th at p. 972.) Rather, the court's review at this stage is limited to "'readily ascertainable facts'" in the record, such as the jury instructions, the record of the crimes committed, and jury findings on the enhancements. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see *People v. Harden* (2022) 81 Cal.App.5th 45, 50 [considering jury instructions and verdicts to determine whether the record of conviction conclusively established that defendant was actual killer].) As the Supreme Court observed in *Lewis*, in holding judicial factfinding is improper at the prima facie review stage,

8

the "'prima facie bar was intentionally and correctly set very low.'" (*Lewis*, at pp. 971-972.) We independently review whether Manrique has made a prima facie case of eligibility for relief. (*Harden*, at p. 52; see *People v. Flores* (2022) 76 Cal.App.5th 974, 991 (*Flores*) ["it is now well-settled that the prima facie determination is a question of law"].)

With respect to a conviction based on a negotiated plea, the superior court must determine at the prima facie review stage, as it does with respect to a conviction by a jury, whether the defendant is ineligible for resentencing because the record of conviction shows as a matter of law that the plea was not based on a now-invalid theory of liability, in this case the natural and probable consequences doctrine. (See *People v. Patton* (2023) 89 Cal.App.5th 649, 657, review granted June 28, 2023, S279670; *Flores, supra*, 76 Cal.App.5th at p. 991.)

Manrique's admissions as part of the negotiated plea are part of the record of conviction. (*People v. Das* (2023) 96 Cal.App.5th 954, 960 ["The trial court also correctly determined it could consider the record of conviction, including the stated factual basis for defendant's guilty plea, in determining whether defendant made a prima facie case for relief."];[3] *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1028 ["The

---

[3] In *People v. Das,* the prosecutor stated as a factual basis for the plea that the defendant and other gang members punched, kicked, and hit the victim, and the defendant then attempted to kill the victim by stabbing him in the head, neck, and chest area. (*People v. Das, supra*, 96 Cal.App.5th at p. 957.) The Court of Appeal, in reversing the superior court's denial of the defendant's petition for resentencing, observed that although the superior court accepted the prosecutor's recitation of facts as the factual

trial court reviewed and relied upon the plea colloquy, which is part of the record of conviction."].)  However, we agree with Manrique that he did not admit either that he was the actual killer or that he harbored the intent to kill.

As the Supreme Court explained in *People v. Curiel* (2023) 15 Cal.5th 433, 449, "'[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense).  [Citation.]  A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable."  [Citation.] The accomplice need not actually foresee the nontarget offense. "Rather, liability '"is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted."'"'  [Citation.]  Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault.  [Citation.]  The defendant need not have intended the murder or even subjectively

---

basis for the plea, the defendant did not stipulate that the facts were true, and therefore, there was no showing that the actual basis for the plea was that he had stabbed the victim with the intent to kill, and the conclusion by the superior court that the defendant acted with an intent to kill was impermissible factfinding.  (*Id*. at p. 962.)

appreciated the natural and probable consequences of the intended crime.  [Citation.]  Senate Bill 1437 ended this form of liability for murder."  (Accord, *Gentile, supra*, 10 Cal.5th at p. 845 ["[U]ntil recently, when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought.  So long as the direct perpetrator possessed malice, and the killing was a natural and probable consequence of the crime the defendant aided and abetted, it did not matter whether the defendant intended to kill or acted with conscious disregard for human life."].)

Manrique admitted as part of the plea colloquy that he was at the house where the plan was formulated "to attack the victim," he drove to the attack location, and he "participated in an attack" that "ultimately [led] to the death of the victim Byron Benito."  Manrique's admissions were consistent with his theory in petitioning for resentencing:  He was present when the plan to assault Benito was formulated; he intended the target offense of assault; he participated in the assault, and the killing of Benito by his accomplices was a reasonably foreseeable consequence of the assault.  It may well be that at an evidentiary hearing the People will prove beyond a reasonable doubt that Manrique, in knowing that 16 fellow gang members intended to attack Benito in retaliation for the death of Flores, Manrique intended to kill Benito in the attack.  But at the prima facie review stage, this

11

requires factfinding as to Manrique's intent beyond the admissions he made as part of the negotiated plea.[4]

*People v. Fisher, supra*, 95 Cal.App.5th 1022, relied on by the People, is distinguishable.  There, the defendant admitted as part of the plea colloquy that he entered an apartment, shot and killed two victims, and shot and injured a third victim.  (*Id*. at pp. 1025, 1028.)  The Court of Appeal rejected the defendant's contention on appeal that the superior court engaged in impermissible factfinding in determining he harbored an intent to kill, concluding the superior court had properly relied on the defendant's admission that he was the direct perpetrator who shot and killed or injured the victims.  (*Id*. at pp. 1028-1029.)  In contrast to *Fisher*, Manrique did not admit he was the actual killer.

The People's reliance on *People v. Romero* (2022) 80 Cal.App.5th 145 is similarly misplaced.  There, as part of a negotiated plea to first degree murder, the defendant admitted that "'during the commission of this crime, [he] acted intentionally, deliberately and with premeditation.'"  (*Id*. at p. 149.)  The Court of Appeal concluded that the defendant was

---

[4]      The People also point out that Manrique gave a statement to Detective Anderson after being advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (recounted by Detective Anderson at the preliminary hearing) that he was at the scene of the killing and attempted to swing at Benito but was not successful because his "arm went out."  Even if we were to consider this admission, it only shows Manrique attempted to assault Benito, not that he intended to kill Benito either by his own assault or the assault of his fellow gang members.

ineligible for relief because the defendant's admissions supported his murder conviction under current law. (*Id*. at p. 152.) The court distinguished the cases in which petitioners had admitted to committing murder willfully, unlawfully, and with malice aforethought, explaining the defendant's "admission to intentional, deliberate, and premeditated murder establishes that he acted with actual malice sufficient to sustain the murder conviction under the law as amended by Senate Bill No 1437." (*Id*. at p. 153.)[5] Here, as discussed, Manrique did not admit he committed murder intentionally, deliberately, and with premeditation, but rather, only admitted to his intent to commit an assault.

The People argue Manrique's admission during the plea colloquy made him ineligible for resentencing because the plan to lure Benito to a remote location included a plan to "attack and *kill* Benito." We would agree with the People if Manrique had admitted to taking part in a plan to kill Benito, but he did not. In their respondent's brief, the People rely not on Manrique's admission during the plea colloquy, but the testimony by Detective Anderson at the preliminary hearing in which he recounted statements made by Jackie Cuentas during a police interview. Detective Anderson testified that Cuentas stated during the interview that one of the 17 assembled gang members

---

[5]     *People v. Saavedra* (2023) 96 Cal.App.5th 444, 448, also relied on by the People,is likewise distinguishable because there the defendant admitted as the factual basis for his plea to attempted murder that "he 'attempted to murder' the three victims 'by personally discharging a firearm at the vehicle' in which the victims were riding," thereby showing he was the actual shooter and attempted to murder the victims.

13

(Daniel Carrillo) told her that during the meeting at her apartment, the group of gang members formed a plan to lure Benito to the remote location where the rest of the group would attack him and "kill him."

Thus, the People rely for their argument on two layers of hearsay—what Cuentas told Detective Anderson about what Carrillo told her. Even if we were to consider testimony from the preliminary hearing (which we do not),[6] hearsay statements

---

[6] The People assert that although the superior court did not rely on the preliminary hearing testimony for its decision, we may do so because Manrique's attorney stipulated that the preliminary hearing transcript provided a factual basis for the plea. We decline to rely on the preliminary hearing transcript because we find persuasive the reasoning in the cases finding the preliminary hearing transcript may not be relied on to show a defendant is ineligible for resentencing. (See *Flores, supra*, 76 Cal.App.5th at p. 991 [preliminary hearing transcript may not be relied on to establish ineligibility for relief even with stipulation that transcript provided factual basis for plea]; *Rivera, supra*, 62 Cal.App.5th at p. 238 [stipulation to grand jury transcript as factual basis for plea did not constitute admission by defendant that he committed murder with malice].) As the court in *Rivera* observed, "Under section 1192.5, a trial court taking a plea must make 'an inquiry . . . of the defendant to satisfy itself . . . that there is a factual basis for the plea.' 'The factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges.'" (*Rivera*, at p. 235, quoting *People v. Holmes* (2004) 32 Cal.4th 432, 441; accord, *Flores*, at p. 990.) The Supreme Court will decide this question in *People v. Patton*, S279670, in which it granted review to decide whether "the trial court engage[d] in impermissible judicial factfinding by relying on the

14

presented at the preliminary hearing may not be considered at the prima facie review stage.  Under section 1172.6, subsection (d)(3), at an evidentiary hearing on a resentencing petition, "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."[7] Although section 1172.6, subdivision (d)(3), only applies at the evidentiary hearing, it would be incongruous to allow the superior court to rely on hearsay statements at the prima facie review stage to deny a petitioner relief but bar the use of the same evidence at the evidentiary hearing.  (See *People v. Patton, supra*, 89 Cal.App.5th at p. 652, fn. 2 ["We consider only the witness testimony 'that is admissible under current law,'

_____

preliminary hearing transcript to deny defendant's Penal Code section 1172.6 petition at the prima facie stage."

In any event, as Manrique points out in his reply brief, the preliminary hearing testimony is not inconsistent with liability under the natural and probable consequences doctrine—it only shows that Manrique was one of 17 gang members who were involved in the attack on Benito, and although Manrique swung at Benito, he missed.  The testimony does not show conclusively that Manrique intended to kill Benito, as opposed to an intent to attack him.  To determine otherwise from the testimony would require impermissible factfinding.

[7] Under section 872, subdivision (b), a qualified investigative officer may testify at a preliminary hearing about otherwise inadmissible hearsay statements made to the officer by persons the officer interviewed.  (*Correa v. Superior Court* (2002) 27 Cal.4th 444, 451-452.)

15

disregarding any testimony that was admitted at the preliminary hearing under Proposition 115, codified as subdivision (b) of Section 872.  (See § 1172.6, subd. (d)(3).)"]; *Flores, supra*, 76 Cal.App.5th at p. 988, fn. 9 ["[W]e fail to see how evidence that cannot establish a petitioner's ultimate eligibility for resentencing could establish a petitioner's ineligibility for resentencing at the prima facie stage."].)

The People also contend that Manrique's admission that he committed the crime of first degree murder, "and that with malice aforethought, [he] murdered Byron Benito as named in count 1 of this information" made him ineligible for relief because his admission he possessed malice aforethought meant he had an intent to kill.  The People contrast Manrique's plea to the one in *Rivera, supra*, 62 Cal.App.5th at page 225, in which the court inquired of the defendant, "what is your plea to Count 1, that on or about October 5, 2012, you did willfully, unlawfully[,] and with malice aforethought murder [Baker] . . . in violation of Penal Code section 187(a), a felony?"  The defendant responded, "No contest."  (*Ibid.*)  The court in *Rivera* reversed the superior court's summary denial of the defendant's petition for resentencing, concluding "[t]he generic manner in which murder was charged here did not limit the People to prosecuting Rivera on any particular theories," and further, "despite the fact that the indictment charged Rivera with murder committed with malice aforethought, it allowed the prosecution to proceed on *any* theory of murder."  (*Id*. at p. 233; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 971 [reversing summary denial of petition for resentencing where defendant pleaded guilty to committing first degree murder "willfully, unlawfully, and with deliberation, premeditation, and malice aforethought," and as a factual basis

16

for the guilty plea "admitted that he did 'what Count 1 of th[e] Information says [he] did, when it says [he] did it.'"].)

Contrary to the People's assertion, the court's reasoning in *Rivera* supports Manrique's position. As in *Rivera*, the generic manner in which the murder was charged here allowed the prosecution to proceed on any theory—including the then-valid theory of imputed malice based on Manrique's participation in an assault (under the natural and probable consequences doctrine). Accordingly, Manrique's plea of guilty to committing first degree murder with malice aforethought could have been an admission only of imputed malice. Manrique's guilty plea therefore did not render him ineligible for resentencing at the prima facie stage.

## DISPOSITION

The order denying Manrique's petition for resentencing is reversed. On remand, the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).

FEUER, J.

We concur:

MARTINEZ, P. J.          SEGAL, J.

17